## INSURANCE COMPANY *v.* WEBSTER.

Where the agent of an insurance company was fully authorized to make insurance of vessels, and had, in fact, on a previous occasion, insured the same vessel for the same applicant, and in the instance under consideration actually delivered to him, on receipt of the premium note, a policy duly executed by the officers of the company, filled up and countersigned by himself under his general authority, and having every element of a perfect and valid contract, the fact that after the execution and delivery of the policy the party insured signed a memorandum thus, "The insurance on this application to take effect when approved by E. P. D., general agent," &c., does not make the previous transaction a *nullity* until approved. Hence, though the general agent sent back the application directing the agent who had delivered the policy, to return to the party insured his premium note, and cancel the policy, the party insured was held entitled to recover for a loss, the agent having neither returned the note nor cancelled the policy.

ERROR to the Circuit Court of the United States for the Eastern District of Michigan; the case having been thus:

One Webber, on the 25th of September, 1860, was, and for a long time had been, the agent of the Ætna Insurance Company, at East Saginaw, in Michigan, and was duly authorized to make insurances, by policies of the company countersigned by himself, against loss by the perils of inland navigation.

To facilitate the making of such insurances with promptitude, the agent was furnished with blank policies duly signed by the president and secretary of the company, and requiring nothing to make them obligatory contracts except to be filled up and countersigned by him.

These things being so, a certain Webster applied, on the 25th of September, 1860, to Webber for insurance on the schooner Ottoca for the residue of the current season of navigation. And thereupon Webber filled up, countersigned, and delivered to Webster a policy of insurance duly executed by the president and secretary of the company, by which seventeen hundred and thirty-three dollars were insured upon the Ottoca from that day (September 25th, 1860)

to the 30th of November, 1860. Webster, on his part, paid the premium by an indorsed note in the usual mode.

The same schooner had previously, in 1858, been insured in like manner on the application of Webster in the same company through the same agent.

On the 25th of October, 1860, the schooner was wrecked, and became a total loss from perils covered by the policy, and notice of the wreck and loss was duly given to the insurance company.

Such was the substance of the proof on the part of the plaintiff below.

On the part of the defendant it was proved that immediately after the delivery of the policy by Webber to Webster, a paper, partly written and partly printed, and called an application, was signed by the latter at the request of the former. This paper contained a general statement of the substance of the transaction, and was also signed by Webber. Following the signatures appeared this printed memorandum :

"The insurance on this application is to take effect when approved by E. P. Dorr, general agent of the Ætna Insurance Company, at Buffalo, New York."

This paper was immediately transmitted by Webber to Dorr, was received on the 29th of September, but the application did not receive his approval, and was sent back to Webber with a letter directing him to return to Webster the premium note received, and to cancel the policy. This letter was received by Webber on the 2d of October.

It also appeared from the evidence that Webber, apparently dissatisfied, wrote to Bennett, another general agent at Cincinnati, on the subject, and seems to have expressed in his letter some apprehension that the course directed by Dorr would "earn for the company the reputation of backing out from contracts regularly made." No attempt was made to cancel the policy, nor was the premium returned, nor was any notice given to Webster of the action of the

general agent until after the loss, when Webster called to give notice of it to the company.

Then, for the first time, Webber informed him that his application for insurance had been rejected, and offered to return the premium note; which Webster declined to receive, and insisted on his contract. The company declining to pay, Webster brought suit against them; and under instructions given by the court and excepted to by the company, verdict and judgment were given for the plaintiff. The Insurance Company then sued out this writ of error.

*Mr. Hibbard, for the plaintiff in error :*

The approval was the *condition* on which the contract became operative. Without that approval there was no contract. Had the original risk been binding until disapproved by the company, and a contract once shown in existence, as was the case in *Perkins* v. *The Washington Insurance Company,*[*] it perhaps might have been the duty of the company to give notice of its disapproval. But the insurance company chose to make no contract but the one in this case, and as there could be no contract until the approval of the application by the company, then the event did not happen upon which alone the contract could exist. Suppose that no policy had been handed by the agent to Webster, and that *the rights of the parties depended on the application alone*, could there be a pretence that there was a contract actually made? It would be like any other application made to an underwriter for insurance, which the insurer did not assent to.

*Mr. Wells, contra :*

The case of *Perkins* v. *The Washington Insurance Co.*, cited on the other side, concludes this. There an insurance company of New York empowered R., a surveyor in Savannah, to make an insurance to take effect from the time when the premium should be paid, and should be received at New York, provided the office should recognize the rate of pre-

* 4 Cowen, 645, 664.

mium, and be otherwise satisfied with the risk. R. advertised at Savannah the terms, and P. paid the usual premium on certain goods on the 5th of January, 1820, to R., who gave him a receipt for the money. Before, however, the premium was received at New York, the goods were consumed by fire, and P. afterwards tendered the premium to the company, and demanded that they should indemnify him, or execute the contract of insurance. It was held that the company was bound. *Lightbody* v. *The North American Insurance Co.*\* is even a stronger case.

The CHIEF JUSTICE delivered the opinion of the court.

We are of opinion upon the case presented, that the liability of the insurance company attached, subject to revocation, on the making and delivery of the policy of insurance, and the receipt of the premium by its agent.

The facts in the case are much stronger against the company than in that of *Perkins* v. *The Washington Insurance Company.*†

In that case the agent had no power to make insurance, but only to receive proposals and determine rates, with an understanding, sanctioned by the company, that if the rates and proposals should prove satisfactory, the company would issue a policy accordingly, and that in the meantime the risk should be binding on it. The court held that the right of the company to refuse a risk upon such proposals was not arbitrary; but that the conditional arrangement of the agent would bind it absolutely in the absence of fraud or misconduct on his part, known to the applicant for insurance.

In the case before us the agent was fully authorized to make insurance, and had, in fact, on a previous occasion, insured the same vessel for the same applicant, and in the instance under consideration, actually delivered to Webster, on receipt of the premium note, a policy duly executed by the officers of the company, filled up and countersigned by himself under his general authority, and having every element of a perfect and valid contract.

---

\* 23 Wendell, 18.                    † 4 Cowen, 645.

The only limitation of this general authority known to Webster was that expressed in the memorandum appended to the formal application signed by him.

In respect to this it is to be observed that Webster was not asked to sign this formal application until after the execution and delivery of the policy; and that it is by no means certain that the appended memorandum even attracted his notice, and, in strictness, it might be well held that validity and effect of the policy was not affected at all by the subsequent acts of the parties.

It is urged, however, that the memorandum is so connected with the formal application, and the application with the contract, that both must be regarded as making part of the entire transaction; and we will consider the case under that point of view.

What, then, is the true effect of the memorandum? In strictness, and taken apart from the transaction, its terms make the validity of the policy depend upon the approval of the general agent. "The insurance on this application to take effect when approved by E. P. Dorr, general agent, at Buffalo." But it is clear that such was not the understanding of the parties, nor of the general agent himself. The policy issued was perfect in form and substance; the premium note was in the usual form, and for the proper sum; the delivery of the policy and the receipt of the note were significant acts. If the general agent had never acted upon the application at all, and the term of insurance had expired without loss, it will hardly be maintained that the insured could set up his omission or neglect in this respect as a defence to an action upon the premium note. The transaction, then, was not a nullity until approved. It must be regarded, we think, as an insurance of the same character as that passed upon in the case from Cowen's Reports. The memorandum, considered in connection with other parts of the transaction, must be treated as, at most, the reservation of a right, not however to be arbitrarily exercised by the general agent, to disapprove the insurance, and annul the contract on notice to the insured and on return of

the premium note. The evidence shows that it was in this light substantially that both the agents regarded the transaction until after the loss. The general agent at Buffalo sent back the application, directing the agent at Saginaw to return to the party insured his premium note, and cancel the policy. The agent at Saginaw, not satisfied with this direction, as is shown by his correspondence with another general agent at Cincinnati, neither returned the note nor cancelled the policy.

It is a necessary consequence of these views that, in the absence of all notice of disapproval until after the loss, the policy must be regarded as valid and effectual.

What has been said covers substantially the several instructions given to the jury by the Circuit Court, and disposes of the exceptions to them.

JUDGMENT AFFIRMED.