Reynolds, J.
I cannot forbear noticing, at the outset, the model way in which this case is presented to the court for review. The case, as settled by the parties, sets out the material facts in a concise and lucid manner, stripped of the redundant matter which, to a greater or less extent, unavoidably creeps in upon the trial, so that the real questions, difficult as they may be' in themselves, are plainly set forth. It is greatly to be desired that such a practice should be more extensively followed by the profession.
[The learned judge here stated the facts.]
By the express language of the contract, it was the duty of the insured to pay the premium within thirty days from date of the policy, and the stipulated consequence of neglecting to perform such duty was the discharge of the insurer from liability.
*462 Similar contracts have repeatedly been held to be valid, not being contrary to the policy of the law ; and they are to receive construction and enforcement upon the same principles that govern analogous engagements outside of insurance policies. It is generally the business of the debtor to seek the creditor and make payment: unless there was something exceptional in this case, or unless the payment, according to the terms of the contract, was waived, the neglect of the insured, as above stated, is fatal to the claim.
In Beadle v. Chenango Co. Mutual Ins. Co. (3 Hill, 161), the defendant pleaded that one of the conditions of the policy was, that should an assessment be made upon the plaintiff’s premium note, and he neglect or refuse to pay such assessment within thirty days after notice thereof, the policy was thenceforth to be null and void; that an assessment had been made, and that the plaintiff, though duly notified of such assessment, refused to pay the same for more than thirty days after such notice, and still refused. On demurrer this was held to be a good defense. It will be observed that the giving of notice in that case was necessary, to put the plaintiff in. the same position as that in which the insured, in this case, put themselves by their contract. Beadle had thirty days in which to pay after notice of his obligation, and his neglect or refusal to do so forfeited his claim.
Wall v. Home Ins. Co. (36 N. Y. 157), is a still stronger case. This clause was in the policy, “ In case the note or obligation given for the premium herefor be not paid at maturity, the full amount of premium shall be considered as earned, and this policy become void, while such note or obligation remains overdue and unpaid.”
The note became due and was protested, and while thus unpaid the vessel insured was lost. Although the company had agreed that the note might lie over a *463 few days, it was held that the right of recovery by the insured was at an end.
The court say “ there was a clear breach of a valid condition, and by the terms of the contract, the obliga-, tion of the insurer was at an end, before and at the time of the occurrence of the loss.
In Merserau v. Phœnix Life Ins. Co. (66 N. Y. 274), the policy provided that the insurer’s liability should cease upon the failure of the insured to pay the premium when due. A premium was overdue and unpaid at the death of the insured. Judge Allen says, “the policy was therefore of no force at the time of the death of the insured, and the insurers are not now liable upon it unless the condition was waived by the company or by an authorized agent.”
There are numerous other cases tending to the same result; the following seem to be directly in point (Gorton v. Dodge Co. Mutual Ins. Co., 5 Ins. L. J. 350; Joliffe v. Madison Mutual Ins. Co., Id. 278—Supreme Court of Wisconsin ; Shultz v. Hawkeye Ins. Co., Ins. L. J. 354—Supreme Court Iowa. See also Boehmer v. Knickerbocker Life Ins. Co., 63 N. Y. 160; Baker v. Union Mutual Ins. Co. 43 Id. 283).
The plaintiff claims that his rights under this policy could not be forfeited without a demand made upon him. This is not in accordance with the contract, nor with the authorities. The rule which requires a demand in certain cases to work a forfeiture of an estate in land, does not apply to contracts of this nature (see cases cited above).
Nor can I agree with plaintiff’s counsel that it was necessary for defendant to give notice of its intention to rescind the contract. The cases already cited are to the contrary ; and those placed upon plaintiff’s brief to establish the proposition do not seem to me to avail for that purpose.
Perkins v. Washington Ins. Co. (4 Cow. 645), turned *464 very much upon the powers of the defendant’s agent, and his acts, as binding the company. The policy was to take effect when* the premium should be paid, and should be received in New York, provided the officer should be satisfied with the risk. The premium was paid to the agent in Savannah, who neglected to forward it, in consequence of which it was not received in New York till after the fire. I am unable to see, from the facts in the case, or the reasoning of the court, how the decision affords any support to the plaintiff’s claim.
In the case of Ins. Co. v. Webster (6 Wall. 129). the policy was delivered, and premium note received by the duly authorized agent of the company. After such delivery, the insured signed a memorandum that the policy was to take effect when approved by D., who was general agent of the company. This approval was to be applied for by the agent effecting the insurance. It was not secured, but the premium note had not been returned, nor the policy canceled before the fire. The Chief Justice says: “The memorandum, considered in connection with other parts of the transaction, must be treated as at most the reservation of a right, not, however, to be arbitrarily exercised, by the general agent, to disapprove the insurance and annul the contract, on notice to the insured, and on return of the premium note.” It will be noticed that the approval was to be by defendant’s agent, and whether he approved, or refused to do so, could not be known to the insured without notice. In the case at bar, the insured knew the consequence of his neglect to pay, because he had fixed it by his own contract; and he needed no notice to make him aware of his own default. On this point we need only recur again to several of the authorities already referred to.
Plaintiff makes the further point that the defendant, being a foreign corporation, and having no office *465 in this State, the insured were not bound to seek the company, or to make any tender to it.
The authorities relied upon to show that a debtor is not bound to seek his creditor out of the State, appear, upon examination, to be cases where the creditor was absent from home. They are cases of contracts, made with residents of the State, and it is held that if the payee absents himself from the State, it is not the duty of the payer to follow him outside of its limits ; if he has no notice of a duly appointed agent to receive payment, a readiness to pay within the State, or, in case a tender is required, tender at the residence.of the other party will suffice. This principle does not apply to the case before us. The contract was made with a foreign corporation, having no office in the State, and the contract was made out of the State, unless the broker is to be regarded as defendant’s agent, and in that case, as his office was in the city of New York, the insured might have made the payment there. This is what they undertook to do on the day of the fire.
Where the policy provided that the. premium should be actually paid to them (the company), or to their duly commissioned agent “within thirty days,” it certainly was not contemplated that the company should be under the necessity of coming into this State to hunt up the insured, taking the chances of finding him. It was his duty to go to the company or their duly commissioned agent, and make the payment. I think, however, the broker is clearly to be regarded as the agent of the insured. He was employed as broker by them. He was “ in the insurance business in the city of New York,” negotiating policies with this and other companies. Defendants kept no account with him, and gave him no credit. They had never conferred upon him any appointment. When he received premiums from policy-holders, he forwarded them, from time to *466 time, to the company, they allowing him commissions on such premiums.
'We all know it is very common for insurance companies to allow commissions to any broker who brings them business. I see nothing in the case to show that Stearns had any real or apparent authority as agent, from the defendant. Besides, it is expressly stipulated in the policy, “ that any person, other than the insured, or the company’s duly commissioned agent, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured named in this policy, and not of this company under any circumstances whatever, or in any transaction relating to this insurance.” I have referred to this matter thus fully, as bearing upon the only remaining question to' be discussed, namely, whether there was any waiver or extension of the time of credit.
It must be admitted that the defendant took extraordinary precaution in the policy to guard against the possibility of any such inference. In addition to the clause already referred to, disclaiming any agency for them on the part of any person procuring the insurance to be taken, other than a duly commissioned agent, it is provided as part of th,e contract (see § 6 of the policy), “that the agent of this company has no authority to waive, modify, or strike from this policy any of its printed conditions . . . nor in case this policy shall become void by reason of the violation of any of the conditions thereof, has the agent power to revive the same . . . any contract by parole or understanding with the agent, to the contrary, notwithstanding.” Again (§ 7), “the use of general terms, or anything less than a distinct, specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction therein.”
Now the plaintiff seeks to escape the force of these *467 provisions, and the terms of his contract, by showing a course of dealing between the defendant and other parties insuring with it, especially those who had procured insurance through the same broker. It was proved that Stearns had for a period of eight months previous to the issuing of the policy in suit, been procuring insurances with defendant for various parties (though never before for' the insured in this policy), that he had forwarded the premiums to defendant in some cases after thirty days had elapsed from the issue of the policies to which they applied, and that no objection had ever been made prior to this case. It also appeared, that as a general thing, defendant did not make a point of canceling unpaid policies at the end of thirty days ; it might be done, depending on whether they expected to receive the premium.
After the loss in question, defendant sent notices to Stearns of intention to cancel certain policies that were unpaid, but had never done so before. With reference to this policy, nothing had taken place between the parties, after its delivery, and before the fire; the only act in regard to it was its cancellation on the books of defendant. It is ■ sought, however, to make out a waiver from the course of the defendant in reference to policies previously issued to other parties.
Even conceding that those contracts were the same as this, and that the knowledge of Stearns as to the extension of credit in other cases was the knowledge of his employers in this, on what principle can the defendant’s waiver of the terms of its other contracts be construed into a waiver of the terms of the contract made with these parties ? A party, by yielding his rights any number of times, does not put it out of his power to make a new contract, and stand upon it. It would not be contended that it was competent to contradict' the terms of this contract, by showing that when it was executed it was verbally agreed that although the *468 policy says the premium must be paid within thirty days, it might be paid with the same effect, any time within ninety days; and yet this express stipulation of the writing is just as effectually contradicted and set aside by a more loose and dangerous species of evidence, when the neglect of one of the parties to enforce forfeitures in other cases is invoked to show that there can be no forfeiture in this. It is equivalent to saying that because the defendant has not insisted upon all of its contracts it shall not insist upon any. Especially does it seem to me that no such effect can be given to a previous course of dealing with other parties, or even the same party, when it has been stipulated that “anything less than a distinct specific agreement, clearly expressed and indorsed on this policy, shall not be construed as a waiver of any printed or written condition or restriction herein.”
Nor do I think it would help the plaintiff to regard Stearns as the agent of the company. In that case, all the previous dealings of the company, with which he was concerned, would have no bearing on plaintiff’s claim ; and even if he had attempted directly to waive compliance with the requirements in question, in the face of sections 6 and 7 of the policy above quoted, he would have been powerless to do so (Van Allen v. Farmers’ Joint Stock Ins. Co., 64 N. Y. 469 ; reversing 4 Hun, 413 ; Merserau v. Phœnix Life Ins. Co., supra; Davis v. Massachusetts Mutual Life Ins. Co., 5 Ins. Law Journal, 736).
The learned judge at the trial submitted the case upon views somewhat different from those we have taken, and if we are right, it will be unnecessary to notice the exceptions in detail.
The result must be a new trial.
.Neilsou", Ch. J., concurred.