PHŒNIX INSURANCE COMPANY *v.* HALE.

Opinion delivered February 10, 1900.

INSURANCE CONTRACT—VALIDITY.—The holder of a policy of fire insurance about to expire applied for renewal thereof, and paid the premium to the insurer's local agent, who delivered to him a "binding receipt," admitting payment and stating that the receipt was binding for 30 days from date, to be invalid on the issue of the renewal policy. The insurer declined to renew the policy, but failed to notify insured, or to return the premium. *Held*, that the insurer was bound under the contract as though the policy had been issued. (Page 437.)

Appeal from Mississippi Circuit Court.

FELIX G. TAYLOR, Judge.

STATEMENT BY THE COURT.

The appellee, William P. Hale, plaintiff below, brought suit at the fall term, 1897, of the Mississippi circuit court, against the Phoenix Insurance Company, of Hartford, Conn., alleging, in substance, that on the 12th of November, 1891, the insurance company issued and delivered to him a policy of insurance No. 6906, for the sum of $600, in which it covenanted and agreed, in consideration of the payment of the premium of $19.50, to insure his barn, located upon the Witherspoon Place, against all loss or damage by fire for the period of three years from the date of said policy. (Neither the original policy nor copy thereof was exhibited with complaint, but plaintiff alleged that it had been lost or mislaid). Plaintiff further alleged that shortly before the expiration of said policy the local surveyor and agent of the Insurance Company, Charles H. Gaylord, made to plaintiff a proposition for renewal of said policy for the further term of three years; that plaintiff accepted the proposition, and then and there paid said agent the sum of $19.50 as premium for renewal of policy No. 6906, insuring the same property for the same amount for the further period of three years from the expiration of the original policy; that at the time the said agent of the insurance company issued and delivered to plaintiff the following binding receipt, viz:

"BRANCH OF THE PHŒNIX INSURANCE COMPANY, HARTFORD, CONN.

"BINDING RECEIPT.

"Premium $19.50.                                  Number 6906.

"This certifies that W. P. Hale of Osceola, Arkansas, has paid to the duly authorized surveyor of this company the sum of nineteen and 50-100 dollars, which entitles him to a renewal of policy No. 6906 (which expires November 12, 1894,) in the Phoenix Insurance Company, of Hartford, Conn., for the period of three years from the countersigning of this receipt, which is binding for a period not exceeding thirty days from the date of the countersigning by the duly authorized surveyor of this company at Osceola, Ark., and subject, in case of loss or damage by fire, to all the printed conditions of said policy, and to be invalid upon the issue of such renewal. This receipt

is not assignable, and any erasure or change made hereon will render it unconditionally null and void, but the same shall not be binding until countersigned by the duly appointed surveyor of the company, at Osceola, Ark.

"D. W. C. SKILTON, Secretary.

"Countersigned at Osceola, Ark., this 27th day of October, 1894.          C. H. GAYLORD, Surveyor."

Plaintiff then alleges that he does not remember whether an additional policy was issued to him or not, as he can find none, but says that, having accepted defendant's proposition to renew, and having paid the premium for renewal, he considered this to be a contract and agreement of renewal of his original policy No. 6906. He also alleges that said transactions above set out had the force and effect of a contract of insurance, and of renewing and keeping alive his said original policy, No. 6906, for the period of three years from the 12th day of November, 1894, and is as binding upon the insurance company as if a new policy had been issued and delivered to him. Plaintiff then alleges that on the 6th day of April, 1897, his said barn was totally consumed by fire, under circumstances not within the excepted causes mentioned in said policy, and became a total loss to plaintiff; that by reason of said loss the insurance company became indebted to him in the sum of $600; that he immediately notified the insurance company of the loss, and demanded payment, which they refused on the ground that he had no insurance with them at the time of his loss.

To which complaint the insurance company interposed a general demurrer, alleging that it did not state facts sufficient to constitute a cause of action, which demurrer was by the court overruled, and to which ruling of the court defendant at the time excepted.

Defendant then answered, denying its indebtedness to plaintiff in the sum of $600, or any other sum, but admitting that on the 12th day of November, 1891, plaintiff took out the policy of insurance No. 6906, which said policy ran for a a period of three years, expiring on the 12th day of November, 1894; that since the 12th of November, 1894, plaintiff has carried no insurance with defendant company for any

amount, nor has defendant, since said time, issued plaintiff a policy of insurance. Defendant admitted that plaintiff did make application to its local surveyor and agent, C. H. Gaylord, for renewal of his said policy upon his barn on the 27th of October, 1894, but denies that he paid to their local surveyor and local agent the sum of $19.50 as premium for renewal of said policy, or that he paid any sum to their said local agent as premium for renewal of said policy. Defendant admitted the execution and delivery of binding receipt described in the complaint to the plaintiff by their local surveyor, who at once forwarded the application of plaintiff to the office of the defendant company, which application was at once rejected, and the plaintiff notified that his said application was rejected, unless he would include in his application his dwelling on his farm, and then with a condition annexed that he must reside in the dwelling. Defendant further alleged that, at the time said application was made by plaintiff for a renewal, he then had a policy of insurance with some other fire insurance company upon his dwelling on said farm, and declined to include his dwelling in his application. Defendant further alleged that its local surveyor and agent, C. H. Gaylord, had no authority to pass upon applications for insurance to bind the insurance company, nor had he any authority to issue policies of insurance, but the right to accept applications for policies of insurance, and to issue the same, was reserved to the home office.

Verdict and judgment for plaintiff, and defendant appealed to this court.

*J. M. Moore* and *W. B. Smith*, for appellant.

The "binding receipt" was not a contract of insurance, except for the time therein limited as a period for negotiations for a renewal. 61 Ia. 216; 61 Ind. 488. Evidence of the usages and customs of insurance companies with respect to such receipts was competent to explain it. 53 Pa. St. 485; 16 Gray, 359; 7 Wend. 270; 12 Cush. 429; Greenl. Ev. § 292. The renewal of the policy would have been a new and distinct contract. 54 Ill. 164. Appellee would have had to contract therefor with some one empowered to bind the company. He

is chargeable with notice of the agent's power.  39 Pac. 587; 62 N. W. 798.  That the surveyor had no authority to renew insurance, see 54 Ark. 78.

*S. S. Semmes,* for appellee.

A parol contract of insurance is good when the parties have come to a definite understanding upon all the elements of the contract.  13 Am. &. Eng. Enc. Law (2 Ed.), 218; 63 Ark. 204; 19 N. Y. 305; 90 N. Y. 281; 19 How. 318; 21 Am. St. Rep. 883 n.; May, Ins. §19; Ostrander, Ins. 10 n., 17, 18; 5 Laws. Rights, Rem & Pr. §§ 2040, 2044.

HUGHES, J., (after stating the facts.)  There was evidence in the case tending to show, and from which the jury might have found, that the appellee, W. P. Hale, made application to Gaylord, the local surveyor and agent of the appellant, the Phœnix Insurance Company, for renewal of his policy of insurance No. 6906; that he paid $19.50 to Gaylord, as a premium therefor; that he received the binding receipt of the company therefor, which was countersigned by Gaylord, the surveyor of the company; that Gaylord forwarded the said application to his company, and that the appellee, Hale, was not notified by said company that it declined to renew said policy, and that said premium of $19.50 paid by Hale to Gaylord was never returned to the appellee, Hale; that Hale believed his policy was renewed by the company, and that he never knew that the company claimed that it had not renewed his policy until after his barn, on which the original policy had been issued, was burned, and the company refused to pay the insurance on the ground that he had not renewed the policy of insurance.  There is a square conflict of testimony as to the payment made, by Hale, the appellee, of the $19.50, and as to whether Hale was notified that his application was refused by the company. These were questions of fact, upon which the jury found in favor of the appellee, and their verdict as to the facts must be taken as correct by this court.

Did the facts, as found by the jury, constitute a contract of insurance upon which the appellee was entitled to recover? It seems to a majority of the court that they did.  If the ap-

pellant received the $19.50 premium paid by the appellee when he made application for the renewal of his policy and received the application, and neither returned the money nor notified the appellee that they declined to renew his policy, we think they are as much bound as though the policy had been issued. It has been decided by this court that a contract of insurance may be effected by parol,—that it need not be in writing. *King* v. *Cox,* 63 Ark. 204, and cases cited.

The cases of *Armstrong* v. *Insurance Co.,* 61 Iowa, 216, and *Barr* v. *Ins. Co. of North America,* 61 Ind. 488, cited by appellant to support the contention that there was no contract of insurance in this case, are not like the case at bar in some material matters of fact.

Affirmed.

BUNN, C. J., (concurring.)   Whether or not the $19.50 were actually paid was a question of fact, and this question the trial court determined in favor of the plaintiff.   This being the case, the only inquiry remaining was as to the real meaning of, and construction to be placed upon, the contract included in what is termed the "binding receipt," which reads as follows, to-wit:

"Premium $19.50.                                    Number 6906.

"This certifies that W. P. Hale, of Osceola, Ark., has paid to the duly authorized surveyor of this company the sum of nineteen and 50—100 dollars, which entitles him to a renewal of policy No. 6906 (which expires November 12, 1894,) in the Phœnix Insurance Company of Hartford, Conn., for the period of three years from the countersigning of this reciept, which is binding for a period not exceeding thirty days from the date of the countersigning by the duly authorized surveyor of the company at Osceola, Ark., and subject, in case of loss or damage by fire, to the printed conditions of said policy, and to be invalid upon the issue of such renewal.   This receipt is not assignable, and any erasure or change made hereon will render it unconditionally null and void, but the same shall not be binding until countersigned by the duly appointed surveyor of the company, at Osceola, Ark.

'D. W. C. SKILTON, Secretary.

Countersigned at Osceola, Ark., this 27th day of October, 1894.                    "C. H. GAYLORD. Surveyor."

Skilton was the general secretary of the Cincinnati branch of the Phœnix Insurance Company of Hartford, Conn., and Gaylord was the local surveyor of the company at Osceola, Ark., and the one in issuing said receipt, and the other in countersigning the same, were each acting within the scope of their respective authorities for that purpose. The latter was, however, not authorized to issue policies of insurance nor renewals thereof.

The receipt held good for thirty days from the date it was countersigned by Gaylord, or *until the renewal policy was issued and delivered*, when the receipt itself became null and void. The meaning of this is that, the receipt being issued on the application of Hale that he wished a renewal of the outstanding policy No. 6906, now about to expire, it bound the company to renew the old or outstanding policy, *conditions* remaining the same substantially as when it was first issued. The very word "renewal" means that the old policy should be repeated in substance. It is the same in this connection as "extended." The thirty days given was mostly for the convenience of the company, to enable it, through its agents, to ascertain if the *conditions* had in fact remained the same; for instance, that the property first named in the policy continued to exist, and in its original shape and condition substantially. That these and similar facts should exist was the reason that the receipt itself should be countersigned by the surveyer before it could take effect. The office and function of a surveyor, as used in the connection, is that of ascertaining the character and condition of property by examination and admeasurement. Hence it was a safeguard to the company that this officer should countersign the receipt before it should have any effect whatever. The company would then be informed that the conditions remained substantially the same as when the original policy was issued. And, to make doubly sure, the company gave itself thirty days in which to perfect its inquiry in this regard, and to make out, issue and deliver a renewal policy in due form. The benefit of such a receipt to the insured is of

course to indemnify him against loss in the meantime, if any should occur. It is plain that the obligation contained in the receipt remained in force until the company should issue the renewal, or at least refuse to do so, and so inform Hale. These obligations were direct from the company, and not created by Gaylord, except as a countersigner. It is in evidence that Gaylord reported his acts to the company in respect to countersigning and delivering the receipt, and that the company refused to renew the policy unless Hale would include additional property in the insurance—his residence. There is no satisfactory evidence that Hale was informed of this refusal and this condition of renewal. At least, upon the evidence, the court, in effect, found that he had not been notified.

The company had obligated itself to issue a renewal policy, on the payment of the fees, and on condition that things remained the same. It had no right to impose different conditions, and, on Hale's refusal to comply with these, to refuse to issue the renewal. Had the receipt not been given by which the company had obligated itself to issue the renewal policy, it could have renewed the policy or not just as it saw fit to do or not to do; but by the terms of the receipt it had said that, on the receipt of the $19.50, Hale was entitled to a renewal, and of course this meant, if Gaylord would say by his countersigning the receipt that the condition remained the same as at first, Hale was entitled to the renewal after paying the premium aforesaid. A strict renewal was all that Hale could claim or demand from the company, and this much the company, by its written obligation, contained in said receipt, was bound to give him, and it could not avoid this obligation by imposing upon Hale additional conditions and burdens than those contained in the policy or charged in the express language of the receipt. Hale, it seems, had complied with all the conditions upon which a renewal proper might be issued. The company was bound to comply with its part of the contract, and issue a renewal policy, not a new policy or a different policy. Failing to do this, it was bound as if it had done so, and the loss occurred.

BATTLE, J., dissented.