## AMERICAN LIFE INS. CO. OF ALA-BAMA v. HUTCHESON.

No. 7959.

Circuit Court of Appeals, Sixth Circuit.

Jan. 15, 1940.

J. F. Finlay, of Chattanooga, Tenn. (Kelly & Kelly, of South Pittsburgh, Tenn., and Finlay & Campbell, of Chattanooga, Tenn., on the brief), for appellant.

Chas. C. Moore, of Chattanooga, Tenn. (Chas. C. Moore, of Chattanooga, Tenn., and Tom C. Kelly, of Jasper, Tenn., on the brief), for appellee.

Before ALLEN, HAMILTON, and ARANT, Circuit Judges.

ALLEN, Circuit Judge.

This appeal arises out of a verdict and judgment in favor of appellee in an action upon two applications for life insurance made by appellee's husband, hereinafter called the applicant, on October 10, 1935. The appellant company's agent had issued so-called "binding receipts" dated October 11, 1935, upon payment of premiums. No policies were ever issued, and the applicant was killed by accident on October 26, 1935.

The case arises out of the following facts:

Flavius N. Hutcheson was insured under a life insurance policy issued by the Lincoln National Life Insurance Company in the amount of $5,000. The premium was due on September 10, 1935, and the grace period expired on October 10, 1935. Hutcheson's brother-in-law, W. T. Hoge, a life insurance agent who had sold him the Lincoln policy, about this time became agent for appellant. Upon October 9, or 10, 1935, Hoge went with Hall S. Crain, agency director for appellant, to see Hutcheson, and Crain solicited insurance from Hutcheson. Hutcheson explained that he had a policy in the Lincoln, on which the premium was then due. Hoge testified that Crain told Hutcheson that the proposed policy would take the place of the Lincoln, that he could get "more insurance" in appellant company (for the same money), and that the binding receipt and payment of the premiums put the insurance in force at once. Crain denies this, although he says he used "argument and persuasion" to get prospects to apply for insurance. Hutcheson paid the premiums on October 10, 1935, when he signed the applications. He was examined by the medical examiner on October 11. The report of the medical examiner stated that there was no evidence of past or present disease, and showed Hutcheson to be in excellent health. After receiving this report, Hoge says Crain again told Hutcheson that the insurance was in force.

The binding receipts provided:

"First:—If a full first premium in accordance with the published rates of the Company for the form of policy applied for in Question 22 has been paid at the time of making such application, and declaration of such payment is made therein, the insurance, subject to the terms and conditions of the policy contract applied for and in use by the Company at this date, shall take effect on the date hereon, provided the application is completed as agreed therein, and provided the applicant is on this date a risk acceptable to the Company under its rules, on the plan, for the amount and at the rate of premium declared paid, and provided further that the applicant is on this date in good health; otherwise the payment evidenced hereby shall be returned upon demand and surrender of this receipt."

The medical examination report received at the home office on October 12, 1935, showed that Hutcheson's systolic blood pressure was 148, and his diastolic blood pressure, 78. The company had a rule, established by the medical examiner and the first vice-president, that it would not accept any application when the systolic blood pressure was over 140. While other medical rules of the company were printed in a book of instructions given to agents, this rule was not printed. On October 14 the company wrote the examiner for a second blood test, which was taken. It arrived at the home office in the ordinary course of the mail about Monday, October 21. It showed the systolic blood pressure to be 142, and the diastolic 68. Appellant states that it then rejected the applications, and endeavored to place the insurance elsewhere. However, in its pleadings appellant did not aver that it had at any time rejected the applications, but said:

"This defendant avers that it had not at the time of the death of the said Flavius N. Hutcheson as alleged in the bill of complaint, had a sufficient time within which to investigate all matters pertaining to the acceptance or rejection of his applications, and at the time it learned of his death was engaged in investigating matters which had a direct effect upon whether or not it would waive some objections that it properly had with regard to accepting his applications for insurance."

Appellant gave no notice of the rejection to Hutcheson, but learning· of Hutcheson's death on October 26, returned the premiums on November 8, and appellee refused to accept them.

The testimony in general is not in conflict. The agent of appellant denies that he tried to induce Hutcheson to give up the Lincoln policy, and that he stated that the insurance was in force at the date of the application. However, these facts are undisputed: That Hutcheson had a policy in full force and effect on October 10, 1935, when the new applications were made; that he knew the Lincoln policy would expire that day unless he paid the premium; that the applications, payment of premiums, and issuance of the .binding receipts constituted an effort to substitute appellant's policies for the Lincoln. It is an inevitable inference from these facts that Hutcheson would naturally damand an assurance that the new policies would be in effect from October 10, 1935. Two policies were applied for, one for $5,000, and one for $2,500, which fact is consistent with the testimony that Crain said Hutcheson could get more insurance in appellant company than in the Lincoln. The premiums were received by appellant on October 12.

The trial court left it 'to the jury to determine whether appellant had unreasonably delayed giving notice of the rejection of the application, and the ·jury returned a verdict for the appellee.

Appellant contends that the application made by Hutcheson constituted an offer which the company was at liberty either to accept or ·reject, and that mere lapse of time does not constitute an acceptance. Conceding that the only issue of fact in the case was that submitted by the trial judge, namely, whether the· time which elapsed without notice of rejection was unreasonable, appellant argues that there was no un-reasonable delay in the rejection of the claim.

Appellee contends that the representation of Crain that` the insurance was in force on October 10 created a binding contract effective as of that date, urging that the Tennessee statute, § 6087, Tennessee Code of 1932, necessitates this conclusion. This section reads:

"Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers."

■ While this statute has been broadly construed in Tennessee, and under it the insurer has been held responsible for the representations of the agent in respect to terms not covered by the provisions of the policy, to perhaps an unusual degree, we think that this consideration does not decide the case. Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767, 48 A.L.R. 1168, stresses the responsibility of the insurer for the acts of its agents, but involves no question as to whether the policy had· been issued by the company. Ætna Life Ins. Co. v. Fallow, 110 Tenn. 720, 77 S.W. 937, presents the usual situation of waiver growing out of a long course of business between the general agent and the insured. The recent decision of the Tennessee Supreme Court in Thrower v. Provident Life & Accident Ins. Co., decided November 25, 1938,[1] seems to narrow the scope of the previous holdings as to the effect of representations of the agent. Under Tennessee law the representations and actions of Crain are not conclusive, but they are significant as constituting part of the circumstances surrounding the application, and as such, properly to be considered by the jury. The crucial question is whether, under the circumstances presented by this record, the delay in rejection of the applications was unreasonable, and if so, what was its legal effect.

■ It is the general rule that mere delay of an insurer in acting upon an application by the insured which, when considered, would be rejected, does not fix liability upon the insurer from its date where the application is subject to the insurer's approval and the application provides that it shall not relate back unless the applicant is accepted. There is a well-recognized exception to this rule that the insurer will not be allowed to reject the application for the sole reason that the insured has died or loss has occurred before action was taken thereon (1) where it is shown that, but for the death or loss, the application would have been accepted and the policy issued, or (2) where there has been

---

[1] Not designated for publication.

an unreasonable delay by the insurer in acting upon the application.

The question of unreasonable delay is one of fact and turns upon the peculiar circumstances of each particular case. Usually it is a question for the jury under proper instructions by the court. Ætna Insurance Co. v. Webster, 6 Wall. 129, 134, 18 L.Ed. 888.

It has long been established that the insurer may be held liable in tort for damages to an applicant for insurance where there has been unreasonable delay in acting on his application. This is because the business of life insurance is affected with a public interest, and the insurer is bound to furnish the indemnity the state has authorized it to furnish, or to decline to do so within such reasonable time as will enable the applicant to act intelligently upon rejection, or to take the consequences of his carelessness. Strand v. Bankers' Life Ins. Co., 115 Neb. 357, 213 N.W. 349. Cf. Great Northern Life Ins. Co. v. Scott, 181 Okl. 179, 72 P.2d 790; Duffie v. Bankers' Life Ass'n of Des Moines, 160 Iowa 19, 139 N.W. 1087, 46 L.R.A.,N.S., 25; Johnson v. Farmers' Ins. Co., 184 Iowa 630, 168 N.W. 264; Boyer v. State Farmers' Mutual Hail Ins. Co., 86 Kan. 442, 121 P. 329, 40 L.R.A.,N.S., 164, Ann.Cas.1915A, 671; Wilken v. Capitol Fire Ins. Co., 99 Neb. 828, 157 N.W. 1021; DeFord v. New York Life Ins. Co., 75 Colo. 146, 224 P. 1049; Dyer v. Missouri State Life Ins. Co., 132 Wash. 378, 232 P. 346; Fox v. Volunteer State Life Ins. Co., 185 N.C. 121, 116 S.E. 266; Wallace v. Hartford Fire Ins. Co., 31 Idaho 481, 174 P. 1009. But appellant urges that these decisions cannot avail the appellee because she has sued in contract instead of in tort. We therefore inquire whether the delay is equivalent to an acceptance of the application.

It is the general rule that mere delay in passing upon an application for insurance is not sufficient in and of itself to amount to acceptance even though the premium is retained. Misselhorn v. Mutual Reserve Fund Life Ass'n, C.C., 30 F. 545; 32 C.J. 1106. But an acceptance may be implied from retention of the premium and failure to reject within a reasonable time. 1 Joyce on Insurance, § 57; Richmond v. Travelers' Ins. Co., 123 Tenn. 307, 130 S.W. 790, 30 L.R.A.,N.S., 954.

The case is governed by the law of Tennessee. Erie Rd. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Cole-McIntyre Norfleet Co. v. Holloway, 141 Tenn. 679, 214 S.W. 817, 7 A.L.R. 1683, holds that when an offer is solicited from and made by the party solicited, the principal of the soliciting agent is held liable as if the offer had been accepted in case of failure to reject within a reasonable time. In the instant case the appellant solicited the applicant, and if the applicant was not notified of rejection within a reasonable time, under the rule of the cited case, acceptance is implied, and a contract exists, so that appellant's contention that appellee should have grounded this action in tort instead of in contract is untenable.

No insurance decision in Tennessee is found precisely in point upon these facts. However, in Richmond v. Travelers' Ins. Co., supra, the court recognizes in substance that the rule is applicable to insurance cases in the following words [123 Tenn. 307, 130 S.W. 791, 30 L.R.A.,N.S., 954]:

"There are cases to the effect that delay will hold the company, where the party making the application has been misled into believing that the insurance would be accepted, and, relying thereon, has refrained from obtaining other insurance. Here, it is observed, arises the element of injury and the consequent estoppel."

We question whether the present transaction gives rise to an estoppel, which, as stated in Henry County v. Standard Oil Co., 167 Tenn. 485, 71 S.W.2d 683, 93 A.L.R. 1483, can never create a right although it may be urged for the protection of a right. Perhaps the better statement is that found in Robinson v. United States Benevolent Society, 132 Mich. 695, 94 N.W. 211, 212, 102 Am.St. Rep. 436, where the court declares:

"In insurance contracts of this character it is the duty of the company to act with reasonable promptness. Failing to reject within reasonable time, the law implies an acceptance."

In Preferred Accident Ins. Co. of New York v. Stone, 61 Kan. 48, 58 P. 986, the court held that the payment of a premium to the general agent and the retention of it will be construed as an acceptance of the application consummating the insurance contract. In that case the agent of

the accident insurance company received an application for an insurance policy, accompanied by the premium. He transmitted the application without the premium to the secretary of the company. The secretary did not disapprove the application, but held it to await a remittance of the premium from the general agent, and failed to notify the applicant of his reason for so doing. The applicant contemplated going upon a trip, and being assured by the agent that the application had been accepted, departed as planned, and was injured before the policy was issued. Recovery was allowed.

A strong decision in support of the present view is Douglass v. Mutual Benefit Health & Accident Ass'n, 42 N.M. 190, 76 P.2d 453. This was an action on an accident and health policy involving facts very similar to those presented here. The soliciting agent there informed the applicant that the policy would be in effect as soon as the application and premium were received at the home office. The court held that the company was required to return the premium without unreasonable delay if the application was rejected, with notice of that fact, and sustained a recovery based upon an implied acceptance of the application. A similar holding was made in a life insurance case, Reck v. Prudential Ins. Co., 116 N.J.L. 444, 184 A. 777. Cf. Peoples Life Ins. Co. v. Whiteside, 5 Cir., 94 F.2d 409; Williams v. Home Ins. Co., 102 Kan. 74, 169 P. 545; Phœnix Ins. Co. v. Hale, 67 Ark. 433, 55 S.W. 486.

■■■ We think this doctrine is controlling here. Having accepted and retained the premium paid upon an application solicited by its agent, the company was bound to act with reasonable promptitude. The record shows that the applicant, had he known of the rejection, could have reinstated his Lincoln policy by simply signing an application therefor. It was a question of fact under the circumstances of the case whether appellant's delay was reasonable. When the first medical report was received on October 12, a request for a second blood pressure test was made on October 14, thus indicating that it did not take the company long to discover that the facts as to the applicant's physical soundness made him appear to be an unsatisfactory risk and to take such action with reference thereto as seemed necessary. Under these circumstances the company should have required very little time after the second examination to decide whether it would accept the risk, and even a short delay in giving notice might be unreasonable. The jury could consider the fact that the company states that it rejected the application on October 21, but that, although five days elapsed before the death of the applicant, no notice had been sent out. The jury was entitled to take into consideration not only the lapse of time, but all the surrounding facts, the solicitation by appellant, the fact that its agent knew that Hutcheson gave up the Lincoln policy with the intention of substituting therefor policies with appellant. While the jury did not find specifically that the applicant was induced by the agent of the appellant to give up his previous policy, we infer from the general verdict rendered that it found in favor of the appellee upon that point. The jury was entitled to take into consideration the statements attributed to the agent, that the policy was in force with the giving of the so-called binding receipt. We cannot say, as a conclusion of law, that the court erred in submitting to the jury an issue of fact as to the reasonableness of the appellant's delay in rejecting the applications.

The judgment is affirmed.