NATIONAL BANK OF COMMERCE, Executor of the Estate of Earl W. Smith, Jr., Plaintiff-Appellant,

v.

ROYAL EXCHANGE ASSURANCE OF AMERICA, INC., et al., Defendants-Appellees.

No. 71–1191.

United States Court of Appeals, Sixth Circuit.

Feb. 17, 1972.

Charles G. Black, Memphis, Tenn.,
Michael T. Hartsfield, Memphis, Tenn.,
of counsel, for appellant.

James M. Manire, Memphis, Tenn., for Royal Exchange Assur. of America, Inc., and William H. McGee & Co.; Max Shelton, Chandler, Manire, Johnson & Harris, Memphis, Tenn., Henry E. Otto, Richard T. Graham & Assoc. New York City, on brief.

W. Frank Crawford, Memphis, Tenn., for Charles W. Harmon & Co., Charles W. Canon and Tom Webb; Thomason, Crawford & Hendrix, Memphis, Tenn., on brief.

Before CELEBREZZE, BROOKS,* and KENT, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from the District Court's judgment for Defendants-Appellees in a suit involving insurance coverage on a 41-foot yacht owned by Earl W. Smith, Jr. The yacht sank on the Mississippi River near Memphis, Tennessee, on July 14, 1968, taking the life of a guest, Mrs. Joan Heimert Talbot, whose administratrix has filed a wrongful death action against Smith. Defendants-Appellees denied insurance coverage as to the yacht itself and any liability which might be incurred through the wrongful death action.

This diversity action was originally filed by Smith against Royal Exchange Assurance of America, Inc. (Royal Exchange) whose insurance policy had covered a 38-foot yacht previously owned by Smith, and William H. McGee & Company (McGee & Co.), a marine underwriter which had issued Royal Exchange's policy on Smith's 38-foot yacht. Subsequently, a Memphis insurance agency, Charles W. Harmon & Company (Harmon & Co.) and two of its officer-agents, Charles Canon and Tom Webb, were joined as defendants and third-party defendants. Prior to trial Smith died, and the suit was revived by the National Bank of Commerce, his executor and Plaintiff-Appellant in the present appeal.

In its complaint and at trial, Plaintiff-Appellant contended that a valid oral agreement to insure Smith's 41-foot yacht as of May 16, 1968, had been entered into between Smith and agent Webb in a telephone conversation on that date. Alternatively, Plaintiff-Appellant asserted that the conduct of the several Defendants-Appellees in "unreasonably delaying notifying" Smith until after the July 14, 1968, sinking that his request for an endorsement covering the 41-foot yacht had not been accepted constituted an implied acceptance of the insurance and/or a negligent breach of the insurer's duty giving rise to liability in tort.

At the close of all of the evidence, the District Court submitted six interrogatories in the form of special verdicts to the jury. As discussed in full below, the District Court instructed the jury that if they determined under interrogatory number 1 that no oral agreement for immediately binding insurance was entered into by Smith and agent Webb on May 16, 1968, the remaining interrogatories relating to implied acceptance and negligent conduct by Defendants-Appellees could not be answered. Upon the jury's determination under interrogatory number 1 that no oral agreement was entered into, the District Court ruled that Smith was estopped from relying on an implied acceptance of his application for an endorsement covering his 41-foot yacht and the alleged failure of Defendants-Appellees to notify him that he had no insurance. Judgment was therefore entered for Defendants-Appellees.

On appeal, Plaintiff-Appellant asserts that the District Court erred in not permitting the jury to answer interrogatories 2 through 6 independently of their answer to interrogatory number 1. For the reasons set forth below, we reverse the judgment of the District Court and remand for a new trial.

* This case was argued to a panel consisting of Judges Celebrezze, Brooks and Kent.

Judge Brooks died before a decision was reached and an opinion prepared.

## I.

The facts relevant to this appeal, as they appear in the record, are summarized as follows. Smith had purchased various types of insurance, including auto and marine, through Harmon & Co. since 1949. Generally, Smith would telephone Harmon & Co.'s office requesting specific insurance, and two or three weeks after such calls he would receive the requested policy or endorsement indicating that coverage was effective as of the date of his telephone call. In September 1964, Smith obtained insurance on a 38-foot yacht from Harmon & Co., and this policy was renewed annually. The last such renewal covered the period October 15, 1967, through October 15, 1968, under a Royal Exchange policy issued through McGee & Co.

On May 16, 1968, Smith telephoned agent Webb at Harmon & Co., informing him that he wanted to transfer the coverage from his 38-foot yacht to a new 41-foot yacht which he was going to pick up in several weeks. Smith claimed that Webb told him he was "covered as of that moment." Webb, however, testified that he merely told Smith that he would write to McGee & Co. asking that an endorsement be issued substituting the new yacht for the old one. Pursuant to this telephone conversation, Webb's secretary sent a letter to McGee & Co. on May 16, 1968, requesting the latter to issue an endorsement effective that date covering the 41-foot yacht and eliminating the 38-foot yacht.

On May 24, 1968, Edward J. Welty, Jr., an underwriter at McGee & Co's Chicago office, wrote to Harmon & Co. acknowledging the May 16, 1968, request for an endorsement for the 41-foot yacht and further stating

"[I]n order that we may properly rate this boat, we need some additional information and are, therefore, enclosing one of our applications for your

use. Our rates include credits for various items of safety equipment which are enumerated in the enclosed application."

On June 3, 1968, agent Webb forwarded the application form to Smith and enclosed a speed memorandum relaying to Smith the above-quoted portion of McGee & Co.'s letter and requesting that Smith return the completed application to Harmon & Co.'s office as promptly as possible.

On or about June 11, 1968, Smith and his Pilot, Sonny Miller, picked up the 41-foot yacht at the Chris Craft factory in Holland, Michigan. Miller testified that while he and Smith were waiting to try out the new yacht, Smith left him for a moment for the purpose of telephoning to have the offshore insurance [1] transferred from one boat to the other. After two or three days of testing the new yacht at Holland, Michigan, Miller and Smith started the trip to Memphis via Lake Michigan and rivers connecting to the Mississippi. After his return to Memphis, Smith struck a submerged cable with his new yacht on June 13, 1968, incurring serious damage to one propeller and shaft. The cost of repairs totaled $357.86, for which no claim was ever submitted to Harmon & Co., McGee & Co., or Royal Exchange.

On June 17, 1968, the above-mentioned application form was received by Harmon & Co. from Smith, 14 days after agent Webb had sent the form to Smith. Harmon & Co. forwarded the completed form to McGee & Co. in Chicago, where it was in turn forwarded to McGee & Co.'s home office in New York with the following speed memorandum by Edward J. Welty enclosed:

"Attached corres. is self explanatory. Please let us have a quotation at your earliest convenience."

A reply was sent by McGee & Co.'s home office on June 1, 1968, advising Welty

---

1. This incident was not further developed in the questioning of Miller, and it is thus unclear what such a phone call respecting off-shore insurance might have

related to. Webb testified that he received no telephone call from Smith after the one on May 16, 1968.

that because their experience on large yachts had been poor, the Company was unwilling to take full coverage on Smith's 41-foot yacht but would participate in one-third of the total coverage. In a letter sent June 25, 1968, Welty informed Harmon & Co. of the above reply from McGee & Co.'s home office and their inability to take the full coverage on Smith's new yacht.

On June 28, 1968, Harmon & Co.'s secretary wrote to Welty acknowledging the latter's June 25th letter, noting that Smith paid $71,000 for his new yacht, and requesting that McGee & Co. issue an endorsement for the full insurance "as per your [June 25] letter." Welty responded with the following message on a speed memorandum sent to Harmon & Co. on July 3, 1968:

> "Gentlemen, You evidently misunderstood our letter of June 25. We cannot endorse this policy to cover for the full $60,000 [hull insurance]. We would be willing, however, to write a ⅓ interest or $20,000 on the new boat provided, of course, you place the additional $40,000 with one or more other Insurance Company [sic]. This is subject to the rates stated in our 6/25 letter."

After receiving this memorandum from Welty, Webb attempted to place all or part of the insurance on Smith's new yacht with two other insurance companies, but neither of these companies had committed themselves at the time the yacht sank.

Smith's 41-foot yacht sank on July 14, 1968, with Smith never having been informed of the above correspondence between McGee & Co. and Harmon & Co. and with none of Smith's premium for coverage on the 38-foot yacht having been refunded.

## II.

At the close of all of the evidence, the District Court submitted the following six interrogatories to the jury, instructing them that if their answer to the first interrogatory was "no", they should not answer the remaining five interrogatories:

"Question No. 1 as submitted to you reads as follows:

> 'Did Tom Webb and Earl Smith, Jr. on or about May 16, 1968, enter into an oral agreement that the 41-foot boat was insured as of that date?'

"As I have indicated, if your answer to Question No. 1 is 'Yes', you should answer the remaining questions submitted to you.

"Question No. 2 reads as follows:

> 'Did Charles W. Harmon and Company have apparent authority from William H. McGee and Company and Royal Exchange of America, Inc. to issue temporary insurance to Earl Smith?'

"Question No. 3 to be answered by you, if you answer Question No. 1 'Yes', reads as follows:

> 'Did Tom Webb mislead Earl Smith, Jr. into believing that insurance on his 41-foot boat had been issued on a temporary basis and in reliance thereon did Earl Smith refrain from obtaining other insurance?'

"Now, Question No. 4, to be answered by you if you answer Question No. 1 'Yes', reads as follows:

> 'Did William H. McGee and Company, Inc., by the conduct of its own officials and other employees in correspondence with Charles W. Harmon and Company and its employees, cause Earl Smith to be misled into believing that insurance on his 41-foot boat had been accepted and, in reliance thereon, did Earl Smith refrain from obtaining other insurance?'

"Question No. 5, to be answered if you answered Question No. 1 'Yes', reads as follows:

> 'Did William H. McGee and Company, Inc., by the conduct of its own officials and other employees in the correspondence with Charles W. Harmon and Company employees, mislead the employees of Charles W. Harmon into believing that insurance on the 41-foot boat had been ac-

cepted and, in reliance thereon, did Charles W. Harmon and Company employees refrain from obtaining other insurance for Earl Smith from another source?'

"Question No. 6, to be answered if you answer Question No. 1 'Yes', reads as follows:

'Did Tom Webb unreasonably delay notifying Earl W. Smith that William H. McGee and Company had rejected coverage on the 41-foot vessel.'

"Of course, if you answer the first Question 'No' you do not concern yourself with the other questions"

The jury's answer to interrogatory number 1 was "no," and therefore they were not permitted to answer the remaining five interrogatories. In its Supplemental Memorandum Decision filed with the Judgment, the District Court concluded that because the jury determined that no oral agreement for immediately binding insurance was entered into by agent Webb and Smith, Smith was simply an applicant for a written endorsement substituting the new and larger yacht for the smaller one. As such, Smith was bound by the terms of the existing policy on the 38-foot yacht, which provided in pertinent part:

"Changes. No officers, agent or other representative of this Company shall have the power to waive any of the terms of this Policy unless such waiver be endorsed upon or attached hereto; nor shall any privilege or permission affecting the insurance under this policy exist or be claimed unless so endorsed or attached."

"Transfer of Interest. This insurance shall be void in case this Policy or the property insured thereby shall be sold, assigned, transferred or pledged with-

out previous consent in writing of the Company."[2]

The District Court therefore concluded that "Smith was estopped from claiming reliance on an executory agreement to issue an endorsement to the existing policy," citing Caldwell v. Virginia Fire & Marine Ins. Co., 124 Tenn. 593, 609–610, 139 S.W. 698 (1911).

The District Court further concluded in its Supplemental Memorandum Decision that Smith could not have relied upon an implied acceptance of his application by virtue of Defendants-Appellees' alleged failure to promptly notify him of their rejection so that he might obtain insurance from another source. The Court based this determination on its finding that Smith himself had caused a substantial portion of this delay by failing to promptly provide the information requested in McGee & Co.'s application form. In addition, the Court ruled that Smith could

"hardly be said to have relied upon acceptance of an application for an endorsement when, according to his testimony and his proof, he was relying upon the existence of a previously executed binding oral agreement as of on or about May 16, 1968, between him and Tom Webb acting under apparent authority of McGee & Company. Similarly, Charles W. Harmon & Company and Tom Webb cannot be liable under a tort claim for an unreasonable delay."

The Court therefore entered judgment for Defendants-Appellees.

In view of the alternate theories of relief asserted in the complaint and the evidence in the record, we believe that the District Court erred in not permitting the jury to answer interrogatories 3 through 6 independently of their answer to interrogatory number 1.

2. The evidence established that in February 1968, Smith had turned his 38-foot yacht over to a boat dealer in Gulfport, Mississippi, from whom Smith had ordered his new 41-foot yacht. The 38-foot yacht had in fact been sold by the dealer prior to Smith's May 16, 1968, telephone call to agent Webb requesting an endorsement

for the new yacht. Absent an oral agreement which would have waived this provision, the District Court apparently accepted the argument that this transfer and sale without Defendants-Appellees' knowledge or consent voided the insurance under the existing policy.

While we recognize that under Rule 49 (a), Fed.Rules Civ.Proc., District Courts have wide discretion in the use and form of interrogatories, Tennessee Consolidated Coal Co. v. United Mine Workers of America, 416 F.2d 1192, 1200 (6th Cir. 1969), cert. denied, 397 U.S. 964, 90 S.Ct. 999, 25 L.Ed.2d 256 (1970); Erwin v. Keck, 351 F.2d 403, 406 (6th Cir. 1965), it is equally clear that all material factual issues raised by the pleadings and evidence should be covered by such interrogatories. Scott v. Isbrandsten Co., 327 F.2d 113, 119 (4th Cir. 1964); Duke v. Sun Oil Co., 320 F.2d 853, 865 (5th Cir. 1963).

Interrogatory number 1 related only to whether Smith and agent Webb entered into an oral agreement on May 16, 1968, binding coverage on Smith's new yacht as of that date. The asserted oral agreement was the basis of one of three theories of relief asserted in the complaint. It is clear that the jury's determination that no such oral agreement was reached between Smith and Webb eliminated the need for the jury's consideration of interrogatory number 2, respecting the apparent authority of Webb to enter into such a binding oral agrement. We do not believe, however, that the jury's determination under interrogatory number 1 precluded the need for further findings of fact under interrogatories 3 through 6, which related to the implied acceptance and negligence theories of recovery.

■ The District Court properly ruled that under Caldwell v. Virginia Fire & Marine Insurance Co., 124 Tenn. 593, 609–610, 139 S.W. 698 (1911), Smith was estopped from claiming reliance solely upon an executory agreement for insurance unless he could prove a waiver of the provision in his existing policy which specified that any privilege or permission under the policy must be endorsed and attached thereto. Thus, under T.C.A. § 56–705,[3] proof that agent Webb and Smith had orally agreed on May 16, 1968, that the 41-foot yacht was insured then and there could have effectively waived the written endorsement requirement in the existing policy, notwithstanding the collateral requirement that such waivers must similarly be in writing and attached to the policy.

■ The jury's determination that there was no oral agreement and waiver of the written endorsement on May 16, 1968, did not, however, bar Plaintiff-Appellant's alternate claims of implied acceptance under interrogatories 3 through 5. As noted by the District Court, an implied acceptance can be recognized as a basis for relief when an insurance company fails to accept or reject an application with reasonable promptness, thus leading the applicant to believe that insurance has been accepted and preventing him from seeking insurance from another source. American Life Insurance Co. of Alabama v. Hutcheson, 109 F.2d 424, 427–428 (6th Cir. 1940). We do not believe that Plaintiff-Appellant's claim of implied acceptance was in any way barred by the written endorsement requirement in Smith's existing policy. Indeed, if such were the case, the written endorsement requirements commonly appearing in all types of policies would render this theory of relief unavailable to most policyholders applying for renewals or changes in coverage.

■ As noted above, the District Court ruled on the merits of Plaintiff-

3. T.C.A. § 56–705 (formerly § 6087 in the Code of 1932) provides:

*Solicitors are agents of the insurer— Licensed fire insurance brokers excepted.*—Any person who shall solicit an application for insurance shall in all matters relating to such application and the policy issued in consequence thereof be regarded as an agent of the company issuing the policy, and not the agent of the insured, and all provisions in the application and policy to the contrary are void and of no effect whatever; but this section shall not apply to licensed fire insurance brokers.

See Maryland Casualty Co. v. McTyier, 150 Tenn. 691, 266 S.W. 767 (1924); T. H. Hayes & Sons v. Stuyvesant Ins. Co., 194 Tenn. 35, 250 S.W.2d 7 (1952); Fesmire v. M. F. A. Mutual Ins. Co., 293 F.Supp. 1214 (W.D.Tenn.1968).

Appellant's implied acceptance claim after the jury answered interrogatory number 1. However, we believe, as did the Court in American Life Insurance Co. of Alabama v. Hutcheson, *supra*, 109 F.2d at 428, that where there exists a sufficient factual dispute with respect to the unreasonableness of an insurer's delay, that issue must be resolved by the jury. The record before us reveals that nearly two months elapsed between Smith's May 16, 1968, telephone call to Webb and the July 14, 1968, sinking of the yacht, whereas Smith retained the application form for approximately 14 days, several days of which he spent picking up his new yacht in Michigan. Webb testified that he was of the belief that McGee & Co. had accepted the coverage when Welty requested the additional information for rating purposes. Canon similarly testified that upon his review of Smith's file, he believed that McGee & Co. had accepted the coverage, as evidenced by the request for rating information. When Welty forwarded the completed application form to McGee & Co.'s home office, he requested that the latter provide him with a "quotation" as soon as possible. From the time it received Webb's May 16, 1968, request for an endorsement, McGee & Co. had before it the size of Smith's new yacht, which was the stated reason for its subsequent refusal to accept the entire coverage and not the new information contained in the completed application form. No attempt was made to refund any portion of Smith's premium which had been paid for coverage on the 38-foot yacht. We thus believe that there were sufficient facts to require the jury's determination of Plaintiff-Appellant's claim that Defendants-Appellees failed to accept or reject Smith's application for the endorsement with reasonable promptness, thus leading Smith to believe that his application had been accepted and preventing him from seeking insurance elsewhere.

We similarly find that neither the jury's answer to interrogatory number 1 nor the written endorsement requirement in Smith's existing policy barred Plaintiff-Appellant's tort claim under interrogatory number 6 against agent Webb for his assertedly unreasonable delay in notifying Smith that McGee & Co. had refused to accept full coverage on the new yacht. Webb testified that Smith informed him during the May 16, 1968, telephone call that he would be picking up his new yacht in two weeks or several weeks. Yet, when McGee & Co. notified Harmon & Co. some 40 days later that it would not accept full coverage, Smith was not advised of this development. When the yacht sank nearly two months after he requested the endorsement, Smith had never been informed of the difficulty Webb was having in placing the insurance. We thus believe that there were sufficient facts to require the jury's determination of Plaintiff-Appellant's tort claim against Webb.

We conclude that the manner in which the District Court presented the interrogatories to the jury erroneously precluded the jury's consideration of Plaintiff-Appellant's alternate theories of relief. The judgment of the District Court is therefore reversed and the case is remanded for a new trial.