J. M. BOYER, *Appellee,* v. THE STATE FARMERS' MUTUAL HAIL INSURANCE COMPANY *et al., Appellants.*

No. 17,427.

SYLLABUS BY THE COURT.

INSURANCE—*Neglect of Soliciting Agent—Loss—Liability.* Under the facts of this case it is held that a hail insurance company which issued a policy on a crop of growing corn the day after it was destroyed by a hailstorm is liable in damages for the amount of the insurance which would have been in force before the storm had its soliciting agent not delayed for an unreasonable length of time to forward the application on which the policy was issued.

Appeal from Jewell district court. Opinion filed February 10, 1912. Affirmed.

## STATEMENT.

The plaintiff sued the defendant for damages occasioned by the negligence of its soliciting agent in not forwarding the plaintiff's application for hail insurance promptly, in consequence of which the policy was not issued until after the property sought to be insured was destroyed. The court made the following findings of fact and conclusions of law:

### "FINDINGS OF FACT.

"1. The defendant was at the time of the happenings mentioned below, a corporation existing under the laws of the State of Minnesota.

"2. The defendant, W. P. Woody, was, at the time of the issuance of the policy of insurance hereinafter mentioned, an agent of the said Company, authorized to solicit applications for insurance, to collect premiums and to forward applications to the defendant Insurance Company at Waseca, Minnesota, for approval or rejection by said Company.

"3. On the 7th day of July, 1909, plaintiff J. M. Boyer was the owner of one hundred acres of growing corn, fifty acres of which was situated in Section 21, Township 5 South, of Range 9 West of the sixth principal meridian, and fifty acres situated in Section 21, Township 5 South, of Range 9 west of the sixth principal meridian.

"4. On the 7th day of July, 1909, said W. P. Woody, went to the farm of the plaintiff and took his application for the insurance of the corn above mentioned, for the purpose of insuring it against damage from hail, the limit of the amount of such insurance being $1000, the premium for such insurance being the sum of sixty dollars.

"5. During the negotiations the plaintiff informed Woody that he could pay cash or give his note, but it would be more convenient to give his note. This was agreed to by said Woody.

"6. The crop of corn was exceptionally good, and plaintiff also informed said Woody, in effect, that he desired the application forwarded at once as he had a fine crop of corn and did not wish to lose it.

"7. The application was then drawn up and the note

was executed, made payable to the order of W. P. Woody, which was done for the convenience of Woody in having it discounted.

"8. Woody had never been expressly authorized to accept notes in payment of premiums, but it had been his habit to take them and have them discounted and send in the cash with the application.

"9. Woody's residence and place of business was in Cawker City, Mitchell County, Kansas. He arrived in Cawker City about seven o'clock in the evening. On the 8th day of July at about nine o'clock in the morning, he took the note to a bank in Cawker City to sell it and have it discounted, but the bank declined to purchase it. He kept it in his possession all that day, and on the 9th day of July he drove over to the town of Glen Elder, situated in the same county, and there offered the note for sale and discount at two banks, and they declined to purchase it. He returned to Cawker City, and on the 10th day of July he endeavored to dispose of it to other parties, who declined to purchase it, and on the night of the 10th day of July, 1909, he sent the note and the application to the defendant Company, where it arrived on the 12th day of July, 1909. He had also taken the application of A. T. Boyer and Charles Boyer for insurance on growing crops owned by them separately, and had taken their notes in payment of the premiums thereon. He sent all three of these notes and the applications at the time of sending the application and note of plaintiff, and in his letter informed the Company 'that he would stand for the collection' of the notes; that they owned 680 acres of very fine land in Jewell County, Kansas, but were in debt a good deal, and that they had given a first lien on 165 acres of as fine corn as could be seen in the county, and which was tasseling out in fine shape.

"10. The note, application and letter were received by the secretary of the Company, who made no objection because the application was not accompanied by the cash, and on the 12th day of July, 1909, the policy of insurance, which is marked Exhibit "A" and appears as such in the petition of plaintiff, was issued to the plaintiff and the other policies issued to A. T. Boyer and Charles Boyer.

"11. The application of the plaintiff on which such policy was issued is the one marked Exhibit "B" in plaintiff's petition. A copy of the By-Laws was printed

on the policy so issued and forms a part of the contract under which said policy was to be so issued.

"12. That had said application and note been forwarded on the night of the 7th or on the morning or night of the 8th of July, which could have been done instead of on the 10th, they would have been received by the Company and the policy would have been issued to plaintiff before the destruction of his crop of corn below mentioned. But, considering the critical situation of the corn, the danger of hail from [in] July and August, and the limited number of days the insurance was to run, together with all the other circumstances in this case the court finds that the said agent held said application an unreasonable length of time, and on such account the application was not passed upon by the Company until July 12, 1909.

"13. On the 11th day of July, at 3:30 o'clock, A. M., a violent hailstorm swept over the country and totally destroyed the crop of one hundred acres of corn described in the policy so issued to the plaintiff.

"14. The value of the crop of corn so destroyed was at least $1200.

"15. On the 12th day of July, 1909, the plaintiff made affidavit of his loss, which he sent by United States mail to the proper parties as designated in the policy of insurance, and afterward on the 15th day of July, 1909, he made further and formal proof of loss, as required by the policy of insurance, and deposited it in the United States mail, sending it by registered letter to said Company, and within the time required by the policy of insurance.

"16. The Company has refused and, before the bringing of this action refused, and still refuses to pay for the destruction of said crop or any part thereof.

"17. Section 15 of the By-Laws provided that:

" 'The application and policy and the By-Laws of this Company now in force, or as hereafter enacted, constitute the entire contract between the Company and its members, and no agent is authorized to enter into any agreement which alters said contract in any particular.'

"18. While the Company did not expressly authorize the Agent Woody to accept notes in payment for premiums, yet they notified their agents, including Woody, that if they should find difficulty in discounting notes taken, that the Company would refer them to a

bank that would, and it is apparent many such notes were taken and in that way the Company encouraged its agents to take notes in payment of premiums and this is why Woody took the note payable to himself instead of the Company.

"19. The Company had cautioned the agent Woody, never to send notes when they could be discounted.

"20. The plaintiff believed the agent, Woody, had authority to accept the note in payment of the premium and had no notice to the contrary, save and except such, if any, as is imparted by the matters contained in the application of the plaintiff, and the policy issued to the plaintiff, and plaintiff had no notice that there would be any attempt to discount or sell the note before forwarding the application.

"21. The policy issued to the plaintiff was so issued July 12, 1909, and for a term ending on the 15th day of September, 1909.

"22. A bank in Waseca, Minnesota, in the same city wherein the home office of the Company was situated, had sent a letter to the agent, Woody, informing him that when notes were taken for premiums for policies to be issued by the defendant Company, that said bank would purchase said notes.

"23. The plaintiff has necessarily been compelled to employ attorneys to prosecute this action, and a reasonable fee for such attorneys, the court finds, under the circumstances, should be $200.

"24. On the bottom of the paper upon which the application of the plaintiff for hail insurance is written and occurring below and after the signature, appearing in large type, as large as that in which the body of the application is printed, the following:

" 'NOTICE—All payments of premiums must be made by the assured by bank cheque or draft payable to the order of the STATE FARMERS MUTUAL HAIL INSURANCE COMPANY OF WASECA, MINN., and be attached to and sent the Company with the application.'

"25. The plaintiff has suffered damage to his property by reason of the destruction thereof, in the sum of $1200, and for $1000 of which amount the defendant, The State Farmers Mutual Hail Insurance Company, is liable to the plaintiff.

"CONCLUSIONS OF LAW.

"1. The court therefore concludes that the plaintiff is entitled to recover of the defendant, The State Farm-

ers Mutual Hail Insurance Company, the sum of
$1200; that this liability does not arise from any
contract of insurance, but arises solely and on account
of the failure of the agent, Woody, to forward the ap-
plication within a reasonable time to the said Company,
and upon what the court in this case deems to be such
negligence on the part of the said agent, the judgment
to be rendered in this case is based."

Judgment was rendered for the plaintiff and the de-
fendant appeals.

C. L. Kagey, and R. M. Anderson, for the appellants.

C. M. Higley, J. S. Boyer, and R. C. Postlethwaite,
for the appellee.

The opinion of the court was delivered by

BURCH, J.: The greater part of the brief for the
defendant is devoted to arguments which relate to the
agent's lack of authority, under the restrictions placed
upon him, to effect a contract of insurance, and to the
necessity for an acceptance of the application as a con-
dition precedent to the formation of a contract of in-
surance. Many authorities are cited upon these sub-
jects, including those decisions which hold that unrea-
sonable delay in acting upon an application does not
constitute acceptance and does not warrant a presump-
tion of acceptance. The course of the inquiry in this
case lies in a different direction. This is not a suit on
a contract of insurance and the judgment does not rest
upon the breach of such a contract. The position of
the plaintiff and of the district court is, that under
the peculiar conditions surrounding the transaction
the agent should have forwarded the plaintiff's appli-
cation promptly for acceptance or rejection; that the
application would have been accepted if he had done so
and a contract of insurance would have been consum-
mated protecting the plaintiff from the loss which
occurred; that the negligence of the agent in not for-
warding the application until it was too late for the

acceptance of it to be of any benefit to the plaintiff was the negligence of the company; and consequently, that the company wrongfully deprived the plaintiff of the indemnity he should have had, to his injury.

For all purposes of taking and forwarding the application the agent was the company itself. He could negotiate an application for insurance based upon cash, upon the applicant's note, or upon any other terms, precisely as the board of directors of the company might have done. The option exercised by the agent to take a note instead of the cash which he might have received (Finding No. 5) was an option exercised by his principal. He could dispense with a bank cheque or draft (Finding No. 24) as an essential feature of the application, and whatever the arrangement with the applicant might be, it was the agent's duty to present it for acceptance or rejection to the officer or officers holding the reserved power to determine whether or not a policy should be issued. The agency relation of insurance solicitors to the insurer and the person solicited and the authority of such agents over the subject of the application are fully discussed in the case of *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245, and the rules of law there stated are applicable here.

When the application was solicited by the agent the danger period of the corn-growing season had been reached and early action whereby the risk of injury might be shifted to the defendant was a matter of much consequence to the plaintiff. The application was given for the purpose of transmission to the defendant's headquarters and not that it might be retained by the agent and carried about in his pocket. The defendant itself recognized the necessity for expeditiousness in a letter of instruction to the agent, which was introduced in evidence and which no doubt was regarded by the court as quite material when con-

Boyer v. Hail Insurance Co.

sidering the matters covered by finding No. 12. A portion of the letter reads as follows:

"SPECIAL NOTICE.—Send all applications promptly, because there is no liability of the Company until the application is RECEIVED AND APPROVED by us."

It is fair to presume that likelihood of the destruction of the plaintiff's corn by hail induced the very high rate of premium demanded for the brief term of the insurance—in this case six per cent on $1000, or five per cent of the full value of the crop at the time of the negotiations. There was sufficient danger to the plaintiff to be apprehended from delay in closing the transaction that a reasonably prudent business man, guided by the considerations which ordinarily regulate conduct, would have acted with diligence. If the agent only be considered it is clear enough that he would be liable if his negligent retention of the application prevented its timely acceptance. Since he was merely the arm of the defendant the obligation resting upon him was the obligation of the defendant. Therefore, the duty of the defendant to secure prompt transmission of the application from the solicitor's field to the central office is quite apparent. Whether or not the delay in this case was unreasonable was a question of fact for the trier of the facts and as it is presented here is not one of law for this court.

It is claimed that the finding that a policy would have been issued before the corn was destroyed had the application been forwarded promptly is not sustained by the evidence. The finding is sufficiently sustained by the proof that the application was immediately approved upon its arrival at the defendant's office, and a policy was issued accordingly taking effect at noon of the same day. The position of the defendant was that its hailstorm business was conducted on a cash basis only and its witnesses supported this position by some interesting testimony. They stated that premiums

29—86 KAN.

must be paid in cash, that promissory notes are never accepted, that the defendant was not interested in the plaintiff's note and did not know what became of it, and that the defendant was only interested in a cash settlement for the policy—all in face of the proof that three policies at least (Finding No. 10) were issued on July 12 without cash and without hesitation or objection.

It is said that the plaintiff invited delay by giving his note instead of paying cash. Findings 5 and 6 dispose of this contention and they are abundantly sustained by the evidence. It is further said there is no evidence that the plaintiff did not know the agent would attempt to sell the note before sending in the application. The plaintiff did not testify in so many words that he had no such knowledge, but the evidence is quite conclusive that he believed he had paid his premium and that the application would go forward immediately. Other criticisms of the findings of fact are either invalid or immaterial. Certain evidence objected to was admissible under the decision in the case of *Pfiester v. Insurance Co.*, 85 Kan. 97, 116 Pac. 245.

The judgment of the district court is affirmed.