[No. 18870.　*En Banc.*　January 9, 1925.]

# NINA G. DYER, as *Administratrix of the Estate of C. C. Dyer, Deceased, Respondent,* v. MISSOURI STATE LIFE INSURANCE COMPANY, *Appellant.*[1]

APPEAL (454)—INSURANCE (177)—HARMLESS ERROR—FACTS OTHERWISE ESTABLISHED — ACTIONS ON POLICY — EVIDENCE — ADMISSIBILITY. In an action upon a life insurance policy, it is not prejudicial error to receive evidence that the soliciting agent stated to the insured that the policy would become effective as soon as he took his medical examination, where the application stated that, if the first premium was paid, the policy if and when issued, would be effective on and from the date of the medical examination; nor is it prejudicial error for the solicitor to testify that the insured was an insurable risk where, according to the company's records, he was an insurable risk.

EVIDENCE (82)—EXHIBITS—IDENTIFICATION. It is not error to exclude an exhibit which was not sufficiently identified as the article in question.

INSURANCE (83, 189)—BREACH OF WARRANTY—MISREPRESENTATIONS —INTENT TO DECEIVE—INSTRUCTIONS. In an action on a life insurance policy, it is proper to instruct that no oral representations or warranty shall defeat or avoid the policy unless made with intent to deceive, which is but a statement of the law.

SAME (189)—ACTION ON POLICY—INSTRUCTIONS. Error cannot be assigned on instructions authorizing a recovery on a life insurance policy applied for, upon which the company negligently failed to act, because they failed to submit an issue as to whether insured was an insurable risk, where other instructions covered that subject.

SAME (31, 82)—APPLICATION AND ACCEPTANCE—EFFECT OF DELAY— LIABILITY OF INSURER. An insurance company is liable on a life insurance policy applied for, where, through negligence, there was an unreasonable delay in accepting a policy that would have been accepted prior to insured's death but for such delay.

ABATEMENT AND REVIVAL (19, 20)—DEATH OF PARTY—CAUSES SURVIVING—CONTRACT OR TORT. A cause of action upon a life insurance policy applied for, for negligent delay in accepting the application and issuing the policy prior to insured's death, arises on contract though sounding in tort, and survives to his personal representative, as at common law; Rem. Comp. Stat., § 718, providing that all other

[1]Reported in 232 Pac. 346.

causes [than those mentioned in § 183] shall survive, referring to actions already surviving at common law, and not being an enumeration of causes that survive.

TOLMAN, J., dissents.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered April 14, 1924, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover the amount of a life insurance policy applied for.  Affirmed.

*Bates & Peterson,* for appellant.

*Ellis, Fletcher & Evans,* for respondent.

PEMBERTON, J.—This action was instituted by respondent to recover the amount of a policy of life insurance applied for by C. C. Dyer, deceased.  It is alleged by respondent that the policy, because of the carelessness and negligence of the company, was not delivered to the deceased during his lifetime.  From a judgment entered upon the verdict of the jury in favor of respondent, this appeal is taken.

On the 3rd day of August, 1923, C. C. Dyer and Robert B. Thompson, owners of all the stock of a corporation known as Dyer & Thompson, Incorporated, made application to appellant company for a policy of insurance on the lives of each of the parties in the sum of $10,000.  The first premium upon the policies was paid by the corporation.  The application signed by each of the parties provided that the policies when issued should be dated and be effective on and from the date of the medical examination.  Mr. Dyer submitted to a medical examination by Dr. LaGasa at Tacoma, representing the appellant company, and a report of this examination, together with the specimen of urine, were forwarded to Dr. Ford, medical referee for appellant at Seattle.  This report was received on August 6, 1923, and on the same date forwarded by Dr. Ford

to the medical referee for appellant at St. Louis, Missouri. On August 10, Dr. Ford wrote to Dr. LaGasa, the company's examining physician at Tacoma as follows:

"You sent me a specimen from C. C. Dyer for no apparent reason. Will you please indicate on the identification slips in the future your purpose in supplying me with accompanying specimen, in order that I may know the reason? As neither of these cases were applying for policies of $25,000, I am at a loss to know what to report on my examination slip which goes to the home office."

On August 11, Dr. LaGasa, by telephone, advised Dr. Ford that he sent the report because he thought the rules of the company required it. On August 13 the medical director of the company at St. Louis wrote Dr. LaGasa at Tacoma as follows:

"You recently furnished our referee, Dr. C. B. Ford, with specimen of the above applicant's urine. We will appreciate it if you will advise us if there was any special reason for forwarding this specimen to our referee as the amount applied for is only $10,000 and the examination report is favorable."

Dr. LaGasa replied as follows:

"My nurse and I were both temporarily under the impression that you wanted specimens of urine on $10,000 applications. We have some companies that want urine with 5's, some with 10's, etc. I phoned to Dr. Ford that was the reason for sending the specimens. The examinations were O. K., good risks therefore."

It appears that, after the telephone conversation between Dr. Ford and Dr. LaGasa on August 11, Dr. Ford did not advise the medical examiner at St. Louis that the report and specimen were sent because of a misunderstanding of the rules of the company on the part of Dr. LaGasa. No further investigation was made on the part of the company. Mr. Dyer met his

death by accident on August 20, 1923. His application
for insurance was refused on August 21, after the company had been advised of his death.

The application of Robert B. Thompson was of the
same date. He was examined by Dr. LaGasa at Tacoma on August 6. On August 8, the medical report
was received by Dr. Ford of Seattle, on August 14 approved, and on August 16 the policy was issued.

It appears from the record that the company failed
to issue the policy to the deceased for no other reason
than that the medical examiners were mistaken as to
their duties toward making the various reports required by the company. While Mr. Dyer's examination was made on the 4th, the policy was not issued on
the 20th, the date of his death. While Thompson's
medical examination was made on the 6th, this policy
was issued on the 16th.

It is contended by appellant that the court erred in
permitting the witness Thompson to testify that the
soliciting agent stated to Mr. Dyer that the policy
would become effective as soon as he took his medical
examination. The application itself stated:

"That if the first premium for the insurance hereby
applied for be paid to the agent at the time of making
this application in exchange for the Company's Advance Premium Receipt therefor, corresponding in
date and number with this application and signed by
the Company's agent, the policy, if and when subsequently issued by the Company in accordance with the
terms of and for the amount and on the plan applied
for in this application and delivered to me or my legal
representative shall, unless otherwise specifically requested, be dated and be effective in accordance with
the provisions of such policy, *on and from the date of
the medical examination.*"

In view of the statement in the application that the
policy when issued would be effective on and from the

date of the medical examination, there was no prejudicial error in the court permitting this testimony.

It is next contended that the court erred in permitting the witness Hayes, a soliciting agent, after examining the medical report upon the Dyer application, to testify that the deceased was an insurable risk. While this testimony may have been inadmissible in view of the fact that, according to the company's own records, the deceased was an insurable risk, the admission of this testimony is not prejudicial error.

It is also contended that the court erred in sustaining plaintiff's objection to the testimony of certain witnesses showing that the deceased was killed in an automobile accident resulting from the excessive use of intoxicating liquor. We find that the court permitted the witness to testify with reference to having found a bottle of whiskey near the car after the accident. It is contended that it was error on the part of the court to deny the admission of this bottle of whiskey as an exhibit. We are satisfied that the evidence does not sufficiently identify this as the bottle of liquor taken from the car on the date of the accident, and the request to have it admitted as an exhibit was properly denied.

The appellant contends that the court erred in instructing the jury that no "oral or written misrepresentation or warranty made in the negotiation of a contract or policy of insurance by the assured or in his behalf, shall be deemed material to defeat or avoid the policy or prevent its attaching, unless such misrepresentation or warranty is made with intent to deceive." This instruction properly states the law and it was the duty of the court to instruct the jury as to the law.

It is further urged that the court erred in giving the following instructions to the jury:

"The insurance business being public in character required an insurance company to act fairly and im-

partially upon all applications to it for insurance and to do so with such degree of promptness as its business and a proper investigation of the application and the applicant will permit.     .     .     .

"If you find that defendant negligently failed to act .     .     .     and that sufficient time elapsed before Dyer's death within which defendant could have completed any necessary investigation     .     .     : and that no action on the application was taken, then your findings should be for the plaintiff.''

It is claimed that, under this instruction, even though the jury may have found that the deceased was not an insurable risk, it would be required to find for the respondent. Considering this instruction, together with instruction number 12, as follows:

"You are instructed that you have a right to presume that if defendant company made a reasonable investigation regarding the health, habits, financial condition and morals of the applicant, C. C. Dyer, in connection with his application for insurance, that it would have learned the truth and the facts regarding him whatever they might be.

"You are further instructed that if you find from the evidence that upon completing its investigation regarding the applicant Dyer, that defendant, in the reasonable exercise of its discretion in carrying on its business, would not have issued a policy of insurance upon said application of C. C. Dyer, then your verdict should be for the defendant. You are also instructed that it is to be assumed that the defendant insurance company would accept the risk if advantageous to it, because that is the business in which it is engaged."

they are not subject to such criticism.

It is the contention of appellant that the respondent wholly failed to prove any actionable neglect of legal duty on its part, and that its motion for a nonsuit and for judgment notwithstanding the verdict, and motion in arrest of judgment, should have been granted. It is their contention that  "  .  .  .  the overwhelm-

ing weight of authority supports the rule that mere delay in passing on an application for insurance cannot be construed into an acceptance of it." 14 R. C. L., § 72, p. 896.

"Acceptance of the application in some form being essential to the validity of the contract, mere delay in acceptance of an application made, or failure to notify insured of the rejection of his application, will not, as a general rule, constitute a contract of insurance." 26 C. J. 54.

A life insurance company is liable for the negligence of its agent in failing to properly forward an application for insurance within a reasonable time, if it is shown that the application would have been accepted by the company prior to the death of the applicant but for such negligence. *Carter v. Manhattan Life Ins. Co.*, 11 Hawaiian Rep. 69.

"An insurance company having solicited and obtained applications for insurance and having received payment of the fees or premiums exacted, they are bound either to furnish the indemnity the state has authorized them to furnish or decline so to do within such reasonable time as will enable them to act intelligently and advisedly thereon, or suffer the consequences flowing from their neglect so to do." [Syllabus] *Security Ins. Co. of New Haven v. Cameron*, 85 Okl. 171, 205 Pac. 151.

"An insurance company may be held in damages to an applicant for insurance, where there has been unreasonable delay in acting upon her application for insurance, and the question of unreasonableness of the delay is a question of fact for the jury under proper instructions of the court." [Syllabus] *Columbia Nat. Life Ins. Co. v. Lemmons*, 96 Okl. 228, 222 Pac. 255-256.

See, also, *Wilken v. Capital Fire Ins. Co.*, 99 Neb. 828, 157 N. W. 1021; *Boyer v. State Farmers' Mutual Hail Ins. Co.*, 86 Kan. 442, 121 Pac. 329, Ann. Cas. 1915A 671, 40 L. R. A. (N. S.) 164; *Fox v. Volunteer State Life Ins. Co.*, 185 N. C. 121, 116 S. E. 266;

*Stearns v. Merchants' Life & Cas. Co.,* 38 N. D. 524,
165 N. W. 568; *Johnson v. Farmers' Ins. Co.,* 184 Iowa
630, 168 N. W. 264; *Live Stock Ins. Co. of Huntington,
Wabash & Whitley Counties v. Stickler,* 64 Ind. App.
191, 115 N. E. 691; *Wallace v. Hartford Fire Ins. Co.,*
31 Idaho 481, 174 Pac. 1009.

It is next contended that the cause of action, if any,
in favor of the deceased did not survive. Appellant
insists that the right to demand a policy of insurance
was a personal right to Mr. Dyer, the deceased, and
upon his death this cause of action did not survive,
relying in part upon *Slauson v. Schwabacher,* 4 Wash.
783, 31 Pac. 329, 31 Am. St. 948; *Jones v. Miller,* 35
Wash. 499, 77 Pac. 811; *Rinker v. Hurd,* 69 Wash. 257,
124 Pac. 687; *Conaway v. Co-operative Homebuilders,*
65 Wash. 39, 117 Pac. 716; *Ray v. Industrial Ins. Com-
mission,* 99 Wash. 176, 168 Pac. 1121, L. R. A. 1918
F. 561.

At the time of the passage of the death statute, Code
of 1881, p. 150, § 718; § 967, Rem. Comp. Stat. [P. C.
§ 796], was in force, as follows:

"All other causes of action [than those enumer-
ated in section 183] by one person against another,
whether arising on contract or otherwise, survive to
the personal representatives of the former and against
the personal representatives of the latter. Where the
cause of action survives, as herein provided, the execu-
tors or administrators may maintain an action at law
thereon against the party against whom the cause of
action accrued, or after his death, against his personal
representatives."

In the authorities cited by appellant construing
this section we have held that the legislature, by the
enactment of this section, was legislating with refer-
ence to causes of action already surviving at common
law and was not attempting to announce what causes
of action should survive. It is therefore to be de-

termined whether or not the cause of action for the failure to deliver the insurance policy applied for did survive the death of Mr. Dyer.

It is the contention of the respondent that the cause of action is virtually founded upon contract, although nominally in tort, and such a cause of action at common law would survive. This question arose in the case of *Columbia Nat. Life Ins. Co. v. Lemmons,* 96 Okl. 228, 222 Pac. 255. It was held that, under the statute of Oklahoma, a cause of action on an implied or quasi contract, although founded upon a tort, would survive to the administrator, as well as those founded on contract. In that case the company was held to be liable where an unreasonable delay in acting upon the application for insurance was shown. The court said:

"Was the cause of action founded on contract? We think it may well be held that there was an implied contract if not a legal contract under section 1198, Comp. Okl. Stat. 1921, on the part of the insurance company to act on the application within a reasonable time; that is, either to accept the application and issue the policy, or reject the same, so that the applicant could secure insurance elsewhere, and that the consideration for said contract was the making of the application at the solicitation of the agent, the submission by the applicant at the request of the agent to an examination by the examining physician for said company, and the payment of the premium for the first one-half year, which the receipt provided was for insurance from the date of said payment in case the policy was issued.

"Does the applicant acquire no rights by making an application, submitting to an examination, making a deposit, and forebearing to obtain other insurance, on the faith induced by the agent and the company that the application would be duly forwarded and acted upon? May the company with impunity receive an application and deposit, and take no action whatever? Those engaged in the insurance business need no reminding of the importance of prompt action in such

matters. The applicant in the instant case had done all she could do, and had met all the requirements of the company in connection with an application for insurance, and then can it be said the company owed her no duty at all. We think not. Under section 5060, Comp. Okl. Stat. 1921, a reasonable time for performance is specified for all contracts in which no time is fixed, and therefore the insurance company was bound by the receipt it issued to the deceased, Lulu Lee Lemmons, to act within a reasonable time upon said application, and its alleged failure so to do is the basis of the plaintiff's cause of action, and, although said action sounds in tort, it was based primarily upon said contract, and under section 1198, Comp. Okl. Stat. 1921, the action therefore survived to and was properly brought by the administrator of the applicant's estate.''

''Under the common-law rule, where a cause of action is founded in tort, unconnected with contract, and affects the person and not the estate, the action dies with the person; but when the action is founded on contract, although nominally laid in tort, the action survives.'' *Columbia Nat. Life Ins. Co. v. Lemmons, supra.* [syllabus]

''The question whether an action survives depends upon the nature of the action . . .'' 1 Cyc. p. 49.

''Where the personal representative can show that damage has accrued to the personal estate of the deceased, through breach of the defendant's express or implied promise, the later rule is that he may sue at common law to recover damages, even though the action itself sound in tort.'' Schouler on Wills, Executors, and Administrators (6th ed.), vol. 3, p. 2081, § 2191.

This seems to be the rule in the case of *State ex rel. Bader v. Blake,* 107 Wash. 294, 181 Pac. 685, wherein the estate of the deceased was held because it was directly enriched by the fraudulent representations of the deceased. To the same effect was the holding in the case of *Seward v. Spokane, Portland & Seattle R. Co.,* 64 Wash. 516, 117 Pac. 263, wherein the property

of the estate was damaged through the tort committed, and it was held that, under the common law, the right of action survived.

This being an action based upon contract, although sounding in tort, under the statute of this state, as well as at common law, survives.

The judgment is affirmed.

MAIN, C. J., MITCHELL, PARKER, BRIDGES, and HOLCOMB, JJ., concur.

TOLMAN, J. (dissenting)—In my judgment, if any cause of action survived it was only the cause of action which accrued to the deceased in his lifetime. The cause of action here involved, based upon his death, did not come into existence until death occurred. I therefore dissent.