[No. 33849.   Department Two.   July 25, 1957.]

DELMER C. FREIMUTH, *Appellant,* v. GLENS FALLS INSURANCE COMPANY, *Respondent.*[1]

*Lundin, Barto & Goucher,* for appellant.

*Bogle, Bogle & Gates, Stanley B. Long,* and *C. Calvert Knudsen,* for respondent.

[1]Reported in 314 P. (2d) 468.

FOSTER, J.—This appeal brings here for review a judgment of dismissal, pursuant to respondent's challenge to the sufficiency of the evidence at the close of the plaintiff's case, in an action on a policy of marine insurance on a yacht.

In passing upon the challenge to the sufficiency of the evidence, it must be remembered that the motion admits the truth of all of the plaintiff's evidence and requires the court to draw every favorable inference from it, and it must be construed most strongly against the moving party. *LaMoreaux v. Fosket*, 45 Wn. (2d) 249, 273 P. (2d) 795; *Hardung v. Green*, 40 Wn. (2d) 595, 244 P. (2d) 1163.

On December 1, 1953, respondent Glens Falls Insurance Company, by its general agent, executed a policy of insurance on appellant's yacht, which policy, however, was limited to the Ketchikan harbor and did not cover a voyage from Alaska to Seattle. Consequently, on May 17, 1954, appellant's insurance broker in Seattle by telephone ordered from respondent's general agent there an endorsement on the policy for a one-way trip from Alaska to Seattle between May 20, 1954 and July 20, 1954, and confirmed by a written order, the pertinent portion of which is set out in the margin,[2] in which the policy number, the name of the yacht, and the time and place of the voyage were identified. It is plain beyond cavil that the general agent at all times was fully aware of the impending trip and that it would not be undertaken unless the perils of the voyage were insured against. The following day, upon receipt of that memorandum, the respondent's general agent transcribed it on its own stationery and sent it to the respondent's underwriter, who advised that a survey was a prerequisite to the trip endorsement.

Thereupon, respondent's general agent in Seattle by letter,

---

[2] "Please issue an endorsement to the above policy granting the privilege to make a one-way trip from Juneau to Seattle, such trip to take place any time from May 20th. to July 20th., and the route to be via the inside passage."

the pertinent portion of which is set out in the margin,[3] employed a marine surveyor in Ketchikan, Alaska, for the purpose.

The general agent knew the appellant was then in Ketchikan to bring the boat down as soon as the insurance was effected, and in said letter directed the surveyor to arrange with the owner for the survey, and specifically commissioned the surveyor, without exception or limitation, to approve or disapprove the trip, and declared unequivocally that the existence of coverage was dependent upon his survey. Pursuant to such directions, the surveyor delivered appellant a copy of the letter and made the survey. He ordered the anchor line replaced and that, because the appellant intended to travel alone, he run only during daylight hours. That change having been made and appellant having agreed to restrict travel to daylight hours, the surveyor approved the trip. The following day, Friday, May 28, 1954, the survey report with covering letter, the pertinent portion of which is set out in the margin,[4] was air-mailed to the respondent's general agent in Seattle.

Appellant believed and testified he thought he was covered and would not have otherwise undertaken the trip but would

---

[3]"The above owner is preparing to make a trip to Seattle in the above vessel in the immediate future. Would you please arrange with the owner to make a detailed survey of the vessel and approve or disapprove the trip. Please send us two signed copies of the survey. Owner is to pay for the survey but may send receipted invoice to us for possible reimbursement by Underwriters.

"Existence of coverage is dependent on your survey.

"This letter is written with the permission of Marine Finance Corporation, insurance agent of the owner.

"Send us survey as soon as possible—if the assured cannot be reached, write us air mail to that effect."

[4]"Enclosed is the Report of Survey requested in your letter of May 20th.

"Mr. Freimuth states he expects to leave with the QUESTER for Seattle tomorrow morning and that the trip will take about a week. He will be alone on the boat and will just run during daylight hours.

"In my opinion, this proposed voyage is worthy of insurance providing he does not run during hours of darkness, and providing he installs on his anchor winch the new piece of wire rope he has for anchor line. Mr. Freimuth has agreed to these provisions."

have called his broker in Seattle. The surveyor, likewise, thought the insurance was in force because in the covering letter transmitting the report of his survey, he advised appellant intended to leave on the following day.

Upon completion of the change indicated by the marine surveyor, appellant left for Seattle on Saturday, May 28, 1954. When the covering letter and survey were received by the respondent's general agent in Seattle, it attached a longhand note thereto reading: "Please issue endorsement allowing trip if you believe this acceptable. If not please call," and dispatched the same by special messenger to the respondent's marine office in Seattle. On Thursday, June 3, 1954, two days following the receipt of the survey and the covering letter, and five days after departure, the yacht was destroyed by fire.

In spite of the urgency of the situation and actual knowledge of the impending voyage, respondent did nothing further until fire destroyed the yacht, when it denied coverage.

While appellant contends there was a contract of insurance, the respondent contends, and the trial court held, there was no contract.

Did the respondent, through its general agent, owe the appellant any duty? If so, is there liability for the breach of that duty?

On May 17, 1954, respondent was apprised that the appellant, then a policyholder, desired coverage for the trip from Ketchikan, Alaska, to Seattle "in the immediate future," between May 20, 1954, and July 20, 1954. Respondent so advised its marine surveyor.[3]

In cases of an impending hazard, many courts have held that there is a duty on the part of the insurance company to act with dispatch. The United States supreme court in *National Union Fire Ins. Co. v. Wanberg*, 260 U. S. 71, 67 L. Ed. 136, 43 S. Ct. 32, sustained the constitutionality of a North Dakota statute requiring acceptance or rejection of an application for hail insurance within twenty-four hours. In the absence of statute, the supreme court of Kansas found such a duty in *Boyer v. State Farmers' Mut. Hail Ins. Co.*, 86 Kan. 442, 121 Pac. 329, Ann. Cas. 1915A, 671, 40

L. R. A. (N.S.) 164. See, also, *Security Ins. Co. of New Haven, Conn. v. Cameron,* 85 Okla. 171, 205 Pac. 151, 27 A. L. R. 444; *Kukuska v. Home Mut. Hail-Tornado Ins. Co.,* 204 Wis. 166, 235 N. W. 403.

Tort liability for negligence in failing to act upon an application was sustained in *Dyer v. Missouri State Life Ins. Co.,* 132 Wash. 378, 232 Pac. 346. While tort liability has recently received widespread judicial sanction,[5] it is unnecessary to resolve it here, because the appellant's complaint, brief, and his counsel's oral argument at our bar proceed only upon the theory of contract, and we have reached the conclusion the evidence discloses a completed contract:

Respondent's underwriter advised that the trip endorsement would not be made without a new survey which its general agent ordered forthwith by letter, a copy of which was delivered to appellant. The letter advised that the appellant planned the trip "in the immediate future," and commissioned the surveyor selected by it to approve or disapprove the trip. He approved it. The appellant believed he was insured and said that he would not have undertaken the trip otherwise, but would have called his broker in Seattle. The surveyor was the agent of the respondent and not appellant.

By the survey order, appellant was advised that his "coverage" was dependent upon a favorable survey report. It was favorable. In the field of insurance, "coverage" is not an ordinary word, but one of very precise meaning. The supreme court of Colorado in *Federal Life Ins. Co. v. Wells,* 98 Colo. 455, 56 P. (2d) 936, adopted the following definition:

" 'Coverage' means 'the sum of risks which an insurance policy covers.' New Standard Dictionary (1927). And see Webster's New International Dictionary (2d Ed. 1934)."

---

[5]Rights and Remedies Arising Out of Delay in Passing Upon Application for Insurance, 32 A. L. R. (2d) 487; Insurer's Liability in Tort for Negligent Delay, Vance on Insurance (3d ed.) 228, chapter 5, § 38; The Duty of an Insurer to Act Promptly on Applications, 75 Pa. L. Rev. 207; Delay in Acting on an Application for Insurance, 3 Chicago L. Rev. 39.

See, also, *Carpenter v. Continental Cas. Co.*, 95 F. (2d) 634, 638.

A person of ordinary intelligence would be justified, under such circumstances, in believing that the contract was complete upon the surveyor's approval of the trip. Appellant so understood. The law is well stated in 1 Williston on Contracts (Rev. ed.) 286, § 91C:

"The offeree may authorize the offeror to regard silence as an acceptance of his offer. Such authorization is not likely to be given in express terms, but the conduct of the offeree in previous dealings or in earlier stages of the existing negotiation may have justified the offeror in understanding silence as assent. If he does so understand there is a contract."

Holmes' statement in *O'Donnell v. Clinton*, 145 Mass. 461, 463, 14 N. E. 747, 751, has become classic. He said:

"To lead a person reasonably to suppose that you assent to an oral arrangement is to assent to it, wholly irrespective of fraud."

In *DeBritz v. Sylvia*, 21 Wn. (2d) 317, 321, 150 P. (2d) 978, we said:

"Acceptance of an offer may be implied from conduct as well as from words."

Among recent cases holding that acceptance may be shown by conduct communicated to the promisor are *Griggs v. Oak*, 164 Neb. 296, 82 N. W. (2d) 410, 415; *Siebring Mfg. Co. v. Carlson Hybrid Corn Co.*, 246 Iowa 923, 70 N. W. (2d) 149, 153; *General Electric Co. v. Porter* (C.C.A. 9th), 208 F. (2d) 805, 813, 44 A. L. R. (2d) 854; and *Abalan v. Abalan*, 329 Mass. 182, 107 N. E. (2d) 302.

Respondent's letter to the marine surveyor in Ketchikan, a copy of which was delivered to the appellant at the request of the respondent's general agent, advised that the existence of coverage was dependent upon the survey. That survey being favorable, the contract of insurance was complete. The appellant so understood, and in reliance embarked upon the voyage.

Respondent earnestly argues that respondent's general agent was not authorized to execute the trip endorsement,

but we are not now called upon to determine the validity of that contention. That, and other matters of defense, are for the original determination of the trial court, which has not yet passed upon them. It has only sustained the respondent's challenge to the legal sufficiency of the appellant's evidence. In reviewing that order, it must be remembered that the test is: Does the appellant's evidence, and all inferences from it, accepted as true, and construed most strongly against the moving party, make out a *prima facie* case?

The judgment appealed from is reversed and a new trial ordered.

HILL, C. J., SCHWELLENBACH, DONWORTH, and ROSELLINI, JJ., concur.