## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Gail Malicoat Farthing

    v.

Home Beneficial Life Ins. Co.

### June 14, 1972

By JUDGE ALEX H. SANDS, JR.

This is an action instituted by plaintiff, Gail Malicoat Farthing,[1] widow of Michael Malicoat, deceased, against Home Beneficial Life Insurance Company in which she alleges negligence upon the part of defendant in holding decedent's application for insurance for an unreasonable period of time before acting thereon and in failing to issue and deliver to decedent prior to his death the policy applied for because of negligence upon the part of the company in improperly "rating" decedent *for coverage.*

Defendant demurs to plaintiff's motion for judgment upon authority of *Elliott v. Interstate Life Insurance Co.*, 211 Va. 240 (1970).

---

[1] The original motion for judgment is brought in this name. The style of the proceeding as shown in the caption on the demurrer shows plaintiff to be an infant named Gail Malicoat. It is not clear what her status is but no point appears to have been raised as to this.

518

*Facts*

The facts alleged which, together with all inferences which could be reasonably drawn therefrom, and which must be taken as true upon demurrer are substantially as follows:

On April 17, 1971, defendant's agent Meyers[2] induced decedent to buy a $10,000 life insurance policy in defendant company; classified him according to a schedule of printed rates published by defendant, which he, Meyers, exhibited to decedent; accepted from decedent a written application for the insurance and collected from decedent the first month's premium of $13.35 and assured him that the policy was in effect from that moment on; that on May 15, 1971, almost exactly a month after these events, Meyers called decedent and advised him that his policy had been assigned an occupational rating which would require an additional $1.80 premium per month and that before decedent could meet to discuss this premium increase with Meyers, he, decedent, met his death. It is conceded that no policy of insurance was ever *delivered* to decedent though it could be properly inferred from the other allegations that one had been issued but not delivered.

*Merits Considered*

Defendant's demurrer is based upon the contention that no contract ever came into existence between decedent and defendant. The receipt given decedent by Meyers at the time that the application was accepted and the premium was collected specifically provided that the contract was not to take effect until a policy was issued *and de-livered* unless the conditions of an exception therein set forth were met. Since it is conceded that no policy was ever *delivered*, plaintiff must qualify under the exception in order to establish any contractual right against defendant. The exception provided that the contract

---

[2] It is not alleged whether Meyers was a general agent or merely a soliciting agent, but at this juncture, upon demurrer, it must be assumed that he had all powers not in conflict with the provisions of plaintiff's exhibit No. 2 filed with the motion for judgment.

would be in force from the date of final completion of the application and any required medical examination *provided* (1) that defendant be satisfied on such date that decedent was acceptable to defendant, under its underwriting practices, for the amount applied for and at the established premium rate and (2) that the company approved the application at its home office.

There being no allegation that the application was ever approved at the home office of defendant company or that any delivery of the policy was ever effected, the allegations do not support any outstanding contractual relationship between defendant and decedent at the time of his death. *Elliott v. Interstate Life, supra.*

The allegations of the motion for judgment would, however, support a tort action, it being alleged that the classification originally assigned decedent by Meyers was correct, that the premium collected for this classification by Meyers was in accord with the premium determined by a published schedule of rates of the Home Beneficial, that in effect the only objection voiced by the company to making the contract effective was that decedent's classification called for a higher rating when as a matter of fact his occupation called for the rating originally assigned to him, and that the requirement for an increased rate and the consequent refusal of the company to deliver the policy was the result of the company's negligence in accepting an erroneous interpretation of the duties required by his job. Plaintiff further takes the position that but for the *negligence of the defendant's* agent in failing to forward the application within a reasonable time or that of the company in withholding processing for an unreasonable length of time, this error on the part of the defendant would have been corrected and the policy delivered prior to decedent's death. There is, without question, authority for such a position, the determination of the reasonableness or unreasonableness of the length of the delay being for the jury. *Harvey v. United States Ins. Co.*, 173 Kans. 227, 245 P.2d 1185, 1190 (1952). See Comprehensive Note in 32 A.L.R. 2d beginning at page 523. *See also Duffy v. Bankers' Life Assn., etc.*, 139 N.W. 1087 (Iowa 1913); *Boyer v. State Farmers' Mutual Hail Ins. Co.*, 121 P. 329 (Kan. 1912) (delay of four days); *Columbian Nat. Life Co. v. Lemmons*, 222 P.

255 (Okla. 1924) (twenty-day delay); *Dyer v. Missouri Life Co.*, 232 P. 346 (Wash. 1925) (nineteen-day delay).

### *Proper Party Plaintiffs*

While not specifically set forth as a ground for its demurrer, defendant advanced, at the hearing, the further ground that the plaintiff could not, as named beneficiary under the policy for which application was made, maintain this action of tort against defendant, but if any such right of action existed at all, it would have to be maintained by the personal representative of Malicoat's estate. There is a split of authority upon this point. See Note in 32 A.L.R. 2d beginning at page 537. Since the precise point does not appear to have arisen in Virginia, this court is at liberty to adopt what it considers to be the best-reasoned view as drawn from a comparison of the conflicting authorities. It is believed that the reasoning set forth in *Bekken v. Equitable Life, etc., Co.*, 293 N.W. 200 (N.D. 1940), is representative of the better view. The note in 32 A.L.R. 2d at page 539 indicates that this case turned (in regards the point here under consideration) upon a "real party in interest" statute requiring all actions to be brought in the name of the real party in interest. A reading of the case, however, does not bear this out. While North Dakota did have such a statute in effect at the time, an exception under the statute existed in the case of an executor, administrator, or trustee under an express trust whereby any person serving in such capacity could sue without joining with him the person for whose benefit the action was prosecuted. The court was, therefore, free to determine whether the representative of the decedent's estate or the beneficiary under the policy was the proper party to maintain the action. In holding that the latter was the proper party, the court said:

> The relation between Bekken and the defendant imposed upon the defendant certain duties. The primary and ultimate duty that the parties had under consideration concerned the payment to Bekken's wife of a certain sum of money in the event of Bekken's death. That was the duty that

would have rested upon the defendant if the contract applied for had been made. Whatever protection it was represented would be afforded, by the receipt that was issued, prior to the delivery of the policy *of necessity was intended to operate for the benefit of the beneficiary named in the application.* If the medical director of the defendant had approved the application and the defendant company had determined that under the conditions of the receipt there was liability on its part, then obviously the amount of the policy applied for would have been payable to the beneficiary named in the application, namely, Bekken's wife, and to no one else.

It is our view, therefore, that Ethel M. Bekken, the beneficiary named in the application, may maintain action against the defendant for the detriment which she sustained by the neglect of duty on the part of the defendant; and that the complaint alleges facts showing the existence of a duty on the part of the defendant to said Ethel M. Bekken, as well as to the applicant, a breach of such duty, and a resultant injury to her for the amount of the insurance applied for; and that the evidence adduced is ample to sustain a finding in favor of the plaintiff and against the defendant as to the controverted material facts. We are fully aware that the general holding of the courts, where the question has arisen, is to the effect that the right of action for neglect of duty in acting upon an application for life insurance is vested in the estate of the applicant, and not in the person named as beneficiary in the application. We are not concerned with whether under the facts in the cases where such holding was made, the rule was correct or incorrect. We are agreed that under the facts in this case, the duty of the insurance company extended to the beneficiary named in the application; she was the one injured by the tortious acts of the defendant; she is the real party in interest (20 Standard Ency. Proc. p. 901), and may maintain

suit in her own right for the injury sustained.
(Emphasis added)

It is, accordingly, held that the action in question is properly maintainable by Mrs. Farthing as named beneficiary.

Even were this not true, however, the end result would be the same for the established rule in those jurisdictions holding to the contrary appears to be that an action against an insurance company to recover damages for its failure to act, within a reasonable time upon an application for insurance, although sounding in tort is primarily based upon contract and that the action survives and is properly maintained by decedent's personal representative. 43 Am. Jur. 2d at pages 274-275, and authorities there cited. In such case, the pleadings could be amended to substitute Mrs. Farthing as administrator of Malicoat's estate for the present plaintiff without changing the nature of the cause of action. *Grinels v. Legg*, 208 Va. 63 (1967).

### Conclusion

While, therefore, defendant's demurrer would be good were the action brought upon the contract of insurance, this action, sounding in tort and seeking to hold the company for its negligence in failing to act upon the decedent's application for insurance within a reasonable period of time, withstands the demurrer.

Defendant's demurrer will, accordingly, be overruled.