Paul S. RANES, M.D., Plaintiff–Appellant,

v.

The PAUL REVERE LIFE INSURANCE COMPANY, Defendant–Appellee.

No. 92–35466.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 14, 1993.

Decided Aug. 17, 1994.

---

Daniel R. Fjelstad, Goodwin, Grutz & Scott, Seattle, WA, for plaintiff-appellant.

Stuart D. Jones and I. Franklin Hunsaker, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, OR, for defendant-appellee.

Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether an insurer may be estopped from denying disability coverage for unreasonable delay in processing the insured's application.

## I

In January 1989, Paul Ranes, a surgeon living in Washington State, applied for disability insurance with Paul Revere Life Insurance Company. The application had two parts. Part I required general health and financial information, which Ranes completed on January 3. Part II was a medical form asking for more detailed health information. The application stated: "The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured remains as stated in the Application." It also provided

that: "Applicants will be informed whether or not their application has been accepted within 60 days or be given the reason for any further delay."

Ranes completed Part II of the application on January 26, 1989, during a medical examination required by Revere. On the medical form, Ranes indicated that he had an impairment of his eyes. For twenty-five years he had had occasional flare-ups of iritis and in the previous five years had been treated for this problem by a Dr. Nielson. Ranes did not mention any other eye complications, nor did he indicate that, in 1986, he had seen a Dr. McLean who had diagnosed an inactive retinal scar in his left eye. During the 1986 examination, Dr. McLean had informed Ranes that although no treatment was necessary, the scar could develop into a more problematic condition in the future.

At the same time he completed Part I, Ranes tendered the initial premium and received a conditional receipt. The conditional receipt provided that Revere would insure Ranes from the effective date for sixty days or until his application was approved or rejected, if Ranes was "an insurable risk on the effective date." The receipt defined "insurable risk" as "a person who ... is eligible for the insurance exactly as applied for." It defined "effective date" as "[t]he date of the minimum deposit, or the date on which our initial application requirements are fulfilled for the Proposed Insured, or the issue date requested for the policy, whichever is later." In Ranes' case, the issue date, February 1, 1989, was the effective date for the conditional receipt.

In processing Ranes' application, Revere asked Dr. Nielson to complete an Attending Physician Report. On February 28, 1989, Dr. Nielson completed this form, indicating that Dr. McLean had diagnosed the retinal scar in 1986.

On March 2, 1989, Ranes told Dr. Nielson that the vision in his left eye was deteriorating. On March 8, Dr. McLean preliminarily determined that the scar tissue had become active and was causing the decreased vision. He referred Ranes to Dr. Fine. On March 14, 1989, Dr. Fine determined that the scar had developed into a dangerous condition,

choroidal neovascularization. Both McLean and Fine warned Ranes that treatment could further damage his eye, but that without treatment, his vision could continue to deteriorate. Ranes did not receive treatment.

On March 30, 1989, Revere delivered the policy to Ranes. The policy included a rider excluding coverage for loss of sight in either or both eyes. Ranes asked Revere to clarify this exclusion. In a letter dated April 27, 1989, Revere explained that the rider applied only to conditions resulting from his iritis.

Ranes' vision continued to deteriorate for the next year, until he had to stop performing surgery on August 1, 1990. He filed a claim with Revere on August 6, 1990. Revere denied the claim on January 7, 1991, explaining that since Ranes had experienced a change in health in March 1989, he had not fulfilled the insurance application's condition that he remain in the same health until the delivery of the policy.

Ranes brought suit against Revere for breach of contract and violation of Washington's Consumer Protection Act. Both parties moved for summary judgment. The district court granted summary judgment to Revere. Ranes appeals the grant of summary judgment.

## II

In granting summary judgment, the district court found that since Ranes' health changed before the delivery of the policy, he had not fulfilled the condition precedent to the formation of the contract. Therefore, the court concluded, no contract was formed between the parties, and there could be no breach.

## A

■ Ranes first argues that from February 1, 1989, he was covered by the conditional receipt for any disabilities occurring thereafter. Revere does not dispute that on February 1, Ranes was fully insurable and that the conditional receipt became effective. The conditional receipt provided Ranes with disability insurance, as described in the policy, for sixty days from the receipt's effective

date or until the delivery of the policy. When Revere delivered the policy on March 30, the conditional receipt's coverage terminated. Since Ranes did not become totally disabled until August 1, 1990, well after the expiration of the conditional receipt, his argument fails.

■ Ranes next contends that because he was covered by the conditional receipt beginning on February 1, the coverage under the policy also became effective that day. He claims that the conditional receipt, in effect, eliminated the policy's stipulation that the policy would not become effective until it was delivered and unless the insured's health remained unchanged. To support this claim, Ranes points to the policy's statement that it became effective upon delivery, unless a conditional receipt was issued. According to Ranes' contention, this exception alters the policy's effective date, moving it up to February 1.

We must also reject this argument. First, it ignores the purpose of a conditional receipt—to provide temporary coverage at the price of an early premium payment for the time it takes the insurance company to process an application. *See Foreman v. Holland Am. Ins. Co.,* 47 Wash.App. 596, 736 P.2d 698, 700 (1987); *Orsi v. Aetna Ins. Co.,* 41 Wash.App. 233, 703 P.2d 1053, 1059 (1985); *Carew, Shaw & Bernasconi, Inc. v. General Cas. Co. of Am.,* 189 Wash. 329, 65 P.2d 689, 694 (1937). A conditional receipt is like a short-term insurance policy. It benefits the insured who is covered for the interim, and it benefits the insurer who makes a little early revenue without a long term commitment while investigating the proposed insured. It makes no sense for an insurance company to offer a conditional receipt that moves the policy start date forward, as Ranes claims. Such an arrangement would deprive the insurer of the time to evaluate the proposed insured's riskiness. Ranes cites *Starr v. Mutual Life Insurance Co. of New York,* 41 Wash. 228, 83 P. 116 (1905), to support his argument that the policy became effective when the conditional receipt became effective on February 1, but to little avail. In *Starr,* the insurance company argued that the conditional receipt did not become effec-

tive until the policy was approved and delivered. If the policy was approved, then the insurance was retroactively effective from the date of the conditional receipt. According to the insurer's understanding, if the insured died before the policy was issued but after receiving a conditional receipt, he would not be covered. The court disagreed, explaining that "[i]f there was to be no contract of insurance in any event until the application was approved at the home office and a policy issued thereon, it would seem entirely immaterial to the insured whether the contract related back to the date of the application or not." *Id.* 83 P. at 117.

The court in *Starr,* instead, held that a conditional receipt and a policy should be read together to give effect to both, and that the conditional receipt was effective from its date until the delivery of the policy. *Id.* at 118. Similarly, Ranes' understanding of the relationship between the conditional receipt and the policy destroys the distinction between these two types of coverage. Under his view, Revere might as well have issued a policy effective February 1 and have dispensed with the conditional receipt altogether.

Second, Ranes misreads the policy's language which states that, "[t]he insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured remains as stated in the Application. The only exception to this is the insurance provided in the Conditional Receipt detached herefrom and issued if at least the Minimum Deposit is made with the Application." Ranes claims that the conditional receipt exception in the second sentence waives the conditions precedent in the first sentence.

In *American Agency Life Insurance Co. v. Russell,* 37 Wash.App. 110, 678 P.2d 1303 (1984), the insured made a similar argument, which the court rejected. His life insurance policy paid $100,000, but the conditional receipt paid only $50,000. He died while the conditional receipt was effective and before delivery of the policy. His estate argued that because the conditional receipt became effective before the delivery of the policy, the

condition of delivery was waived. The court held that the clause in the policy providing for a conditional receipt did not supersede the clause requiring delivery for the policy to be effective. *Id.* 678 P.2d at 1306. Therefore, the estate was entitled to only $50,000.

Here, the sentence providing for conditional receipt does not say that if the insured buys a conditional receipt, the insurance provided by the policy becomes immediately effective. Rather, it states that the insurance provided by the conditional receipt is not bound by the condition of delivery of the policy. This exception for the interim insurance makes sense; the insurance would be useless if it did not become effective until the delivery of the policy, when the regular insurance became effective.

Finally, Ranes claims that if the court decides that the conditional receipt did not move the policy's starting date forward to February 1, the result is that from the time of the application in January, to the delivery of the policy on March 30, he was paying premiums and not receiving any coverage. This is wrong. With the conditional receipt, Ranes obtained temporary coverage from February 1 to March 30. If he had been injured in an accident during this time, or if his eye condition had fully disabled him during these months, he would have been covered under the terms of the policy. Unfortunately, Ranes' eye condition took more than a year to render him totally disabled, by which time the conditional receipt had long been expired.

### B

█ Ranes also claims that there is a genuine issue of material fact as to whether he fulfilled the condition precedent to the policy—that his health remain as stated in the application until the delivery of the policy.

█ The burden is on the insurance company to show that it delivered the policy to Ranes after he had a change in health from the time of the application. *Logan v. New York Life Ins. Co.,* 107 Wash. 253, 181 P. 906, 908 (1919) ("[W]hen the policy has been delivered and the first premium paid the burden of proof is upon the insurance company

to show that the policy was delivered while the insured was not in good health...."). If Revere successfully shows a change in health, Ranes cannot recover under the policy. *Williams v. Metropolitan Life Ins. Co.,* 10 Wash.App. 600, 519 P.2d 1310, 1312 (1974) ("[S]uch provisions constitute conditions precedent which, unless satisfied, are fatal to recovery on the policy.").

Revere has shown that on March 8, Ranes went to Dr. McLean because of decreased vision in his left eye. Dr. McLean diagnosed him as having choroidal neovascularization, as predicted in 1986. The doctor sent him to Dr. Fine for a second opinion. Dr. Fine confirmed Dr. McLean's diagnosis. Both doctors testified that the development of choroidal neovascularization was unrelated to Ranes' chronic iritis and that the only available treatment could cause a greater loss of vision. This evidence supports the conclusion that Ranes had a change in health—namely, the development of choroidal neovascularization causing decreased vision—between the time he applied for insurance and the time Revere delivered the policy. Ranes has not submitted any evidence suggesting that the doctors' testimony or diagnosis is questionable.

Ranes argues that whether a prospective insured has satisfied this type of health requirement is a jury question, citing *Baker v. Mutual Life Insurance Co. of New York,* 32 Wash.2d 340, 201 P.2d 893 (1949). However, the court in that case simply held that the particular evidence presented at trial supported a verdict in either direction. The court did not state a general rule that whether an insured's health has changed is a question of fact.

Ranes also cites *Turner v. American Casualty Co.,* 69 Wash. 154, 124 P. 486 (1912). In *Turner,* the court held that it was a question of fact whether the insured's physical condition—an atrophied leg—caused him to slip on ice, resulting in total disability. *Id.* 124 P. at 488. This case holds that the cause of a disability, not whether a change in health has occurred, is a question of fact.

Here, Ranes argues that there is a factual issue because his eye condition could have cleared up. He does not deny that his vision

decreased in March, nor does he dispute the doctors' testimony. The fact that the condition could have spontaneously resolved itself does not alter the fact that his eyesight changed for the worse in March, eventually totally disabling him. All the evidence points to the condition manifesting itself and Ranes' health beginning to deteriorate in March, before the policy was delivered. Therefore, Ranes has not raised a question of fact on the issue of his change in health.

### C

■ Even though there is no question that Ranes' health changed before delivery, there is an issue of whether the grant of summary judgment to Revere was proper to the extent that Ranes has raised factual questions on estoppel. Ranes argues that regardless of whether his health changed before the policy was delivered, Revere is estopped from denying coverage because it did not deliver the policy until March 30, nearly three months after he had applied on January 3. Although the insurance application form stated that Revere would process the application within sixty days or inform him of the reason for delay, Revere never notified Ranes of the reasons for the delay.

Ranes rests his argument on *Dyer v. Missouri State Life Insurance Co.*, 132 Wash. 378, 232 P. 346 (1925), in which the Washington Supreme Court held that "[a] life insurance company is liable for the negligence of its agent in failing to properly forward an application for insurance within a reasonable time if it is shown that the application would have been accepted by the company prior to the death of the applicant but for such negligence." *Id.* 232 P. at 348. Ranes contends that, similarly, he would have been covered by the policy if Revere had accepted his application within sixty days of January 3, before his eye condition had manifested.

■ Revere contends that this argument is flawed because *Dyer* is a tort case and this is a contract case. Although Washington courts have not addressed the issue,[1] other courts have decided that the reasonable time rule applies, regardless of whether the appellant has sued for negligence or breach of contract. For example, the California Supreme Court explained in *Barrera v. State Farm Mutual Automobile Insurance Co.*, 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969), that

> [i]t is not vastly important that the legal relationship be placed in a particular category. If we say it is contractual, that is, there is an implied agreement under the circumstances on the part of the insurer to act within a reasonable time, or, having a duty to act, the insurer negligently fails in the performance of that duty, or that the duty springs out of a consensual relationship, and is therefore in the nature of a quasi contractual liability, is not vitally important.

*Id.* 79 Cal.Rptr. at 113 n. 6, 456 P.2d at 681 n. 6 (quoting *Kukuska v. Home Mut. Hail-Tornado Ins. Co.*, 204 Wis. 166, 235 N.W. 403, 405 (1931)). *See also American Life Ins. Co. of Alabama v. Hutcheson*, 109 F.2d 424, 428 (6th Cir.), *cert. denied*, 310 U.S. 625, 60 S.Ct. 898, 84 L.Ed. 1397 (1940) (holding that cases finding tort liability for unreasonable delay are influential in contract estoppel case because "[h]aving accepted and retained the premium ... the company was bound to act with reasonable promptitude"). Following the reasoning of these cases, Revere is estopped from refusing coverage, if its delay was unreasonable. *See Barnes v. Atlantic & Pac. Life Ins. Co. of Am.*, 530 F.2d 98, 100 (5th Cir.1976) ("If the delay in issuance was unreasonable, Insurer is estopped from claiming that all conditions of the [policy] were not met.").

Whether a delay is unreasonable is a question of fact. *Barnes*, 530 F.2d at 100; *Barrera*, 456 P.2d at 689; *American Life*, 109 F.2d at 428. Because Ranes has raised a genuine issue of material fact concerning the reasonableness of the time Revere spent to process the application, we must reverse the

---

1. In *Freimuth v. Glens Falls Ins. Co.*, 50 Wash.2d 621, 314 P.2d 468, 470–71 (1957), the Washington Supreme Court mentioned that an insurer can be held liable for negligence in failing to act upon an application, but found it unnecessary to decide how that rule translated to a case for breach of contract.

grant of summary judgment to Revere and remand for further proceedings.[2]

### III

■ Ranes claims that Revere violated Washington's Consumer Protection Act that makes unlawful "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Ranes argues that Revere violated this statute by refusing to cover his disability under the conditional receipt, by accepting premium payments from him for eighteen months, and by taking five months to respond to his notice of claim.

■ The denial of coverage alone does not constitute the bad faith necessary for a violation of the Consumer Protection Act. *Gould v. Mutual Life Ins. Co. of New York*, 735 F.2d 1165, 1167 (9th Cir.1984), *cert. denied*, 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985); *Miller v. Indiana Ins. Co.*, 31 Wash. App. 475, 642 P.2d 769, 771 (1982). "Bad faith requires a showing of a frivolous and unfounded denial of benefits." *Miller*, 642 P.2d at 771.

Summary judgment on this claim is proper because there is no genuine issue of fact as to whether Revere has not acted in bad faith. First, Revere refused coverage under the conditional receipt because it reasonably and correctly believed that Ranes' total disability occurred more than one year after the conditional receipt terminated. Even if this were a debatable point, Ranes has not produced any evidence indicating that Revere acted frivolously. Second, Revere accepted payments for eighteen months because it had no way of knowing that Ranes' health had changed prior to delivery. If Revere had *not* accepted payments in this situation, Ranes would have had a better case of bad faith. Finally, Ranes has not pointed to any evidence that Revere delayed responding to his claim for frivolous reasons. "Neither denial of coverage because of a debatable coverage question nor delay, unaccompanied by an unfounded or frivolous reason, constitutes bad faith." *Insurance Co. of Pennsylvania v. Highlands Ins. Co.*, 59 Wash.App. 782, 801 P.2d 284, 287 (1990). Since Ranes has not presented any evidence raising a genuine issue of material fact, summary judgment in favor of Revere on this claim is proper.

### IV

We reverse the grant of summary judgment on the breach of contract claim because the appellant has raised a genuine issue of material fact concerning whether the appellee is estopped from refusing coverage, and we remand for further proceedings. We affirm the grant of summary judgment on the Consumer Protection Act claim.

AFFIRMED in part, REVERSED in part, and REMANDED. Each party to bear its own costs.

---

**2.** Revere also argues that it is not obligated to cover Ranes' loss of sight because he failed to inform the insurance company of his deteriorating vision. We need not address this claim.

Whether Revere is estopped from refusing to pay or whether Ranes cannot claim coverage because of his failure to satisfy the condition precedent, the failure to inform argument is irrelevant.